## STATE OF MARYLAND *v.* WALTER HAAS, ET AL.
## SAME *v.* MARTY VICKS, ET AL.

[Nos. 114-115, October Term, 1946.]

*Decided March 13, 1947.*

The causes were argued before MARBURY, C. J., DELA-
PLAINE, GRASON, HENDERSON, and MARKELL, JJ.

*J. Edgar Harvey, Assistant Attorney General,* and
*William J. O'Donnell, Assistant State's Attorney for
Baltimore City,* with whom were *Hall Hammond, Attor-
ney General; J. Bernard Wells, State's Attorney,* and
*William H. Maynard, Deputy State's Attorney,* on the
brief, for the appellant.

*G. C. A. Anderson* and *Sol. C. Berenholtz,* for the
appellees, Haas and Hatgimisios; *Eugene O'Dunne,* with
whom was *Hamilton O'Dunne,* on the brief for the appel-
lees, Vicks and Langham.

MARBURY, C. J., delivered the opinion of the Court.

These two appeals were taken by the State of Mary-
land from two orders passed by the Criminal Court of
Baltimore (Chief Judge Smith), one on the petition of
appellees, Haas and Hatgimisios, and the other on the
petition of appellees Vicks and Langham. All of the
appellees were indicted in connection with the same
alleged crime of murder and arson. The Haas-Hatgi-

misios petition alleges in some detail that these petitioners were subjected to a series of questionings and examination by the Police Department of Baltimore City and were denied the right to communicate with their counsel; that they finally had to proceed through writs of *habeas corpus* to enforce the latter right, and they ask that the statements made by them to the police be exhibited and made available to their counsel of record. This petition was demurred to, the demurrer was overruled, then an answer was filed, and the Court ordered that the prayer of the petition be granted but that the execution of its order should · be stayed, pending final action by this Court to which an immediate appeal was taken. The petition of Vicks and Langham asked for an order directing the Police Commissioner to promptly furnish counsel of record with copies of any statements claimed to have been made by either of these petitioners during the time they were in the custody of the Police Department and before they were placd in the Baltimore City Jail. After an answer was filed, an order was passed that counsel be permitted to copy the statements of each of the petitioners, or that copies be promptly furnished their counsel of record, irrespective of whether the statements were signed, or in writing, or oral. An appeal from this order was taken by the State. The Haas-Hatgimisios case is No. 114, and the Vicks-Langham case is No. 115 in this term.

In the Vicks-Langham case, copies of the statements asked for have already been furnished to counsel. Any question involved in this case is moot. It was not the intention of the people of this State in establishing this court through the several constitutional enactments, that it should write treatises on the law. Its duty is to decide *bona fide* cases and disputes between parties. As there no longer exists any dispute in the Vicks-Langham case, it is not within our power to make a decision in that case which will bind any of the parties to it, or accomplish any purpose in it. For that reason, the appeal in No. 115 will be dismissed without any further discussion.

In the Haas-Hatgimisios case, the State is in possession of what it claims to be signed confessions by each of these appellees, and as the operation of the order of the lower court was stayed, these confessions have not been furnished to the appellees or their counsel. As a result, there is a judicial question presented, namely, the right of the court below to pass such an order. Before considering this, however, there are some preliminary matters which must be disposed of.

No trial has yet been had in the case, and no final judgment has been rendered. The appeal is therefore from a preliminary order passed during the conduct of a criminal case. The State has recognized this difficulty in its position, and has filed a petition for a writ of *certiorari* to bring up the record and have it passed upon. The appellees have moved to dismiss this petition and have also asked the court to dismiss the appeal, both because it is premature and because the order appealed from is one whose passage is in the discretion of the court, and therefore not reviewable.

This court has appellate jurisdiction only, and is not authorized to issue writs of *certiorari* except in aid of that jurisdiction, or as a statutory method of exercising that jurisdiction. Code Art. 5, sec. 104; *State v. Depew*, 175 Md. 274, 1 A. 2d 626. If we have jurisdiction to entertain an appeal in this case, then there is no occasion for the issuance of a writ of *certiorari*. The entire record is before us and we can pass upon all questions ready for our consideration. On the other hand, if an appeal does not lie then we have no power to originate a proceeding here by the writ of *certiorari*. This subject has been fully discussed in *Hendrick v. State*, 115 Md. 552, 81 A. 18, and *State ex rel. City of Baltimore v. Rutherford*, 145 Md. 363, 125 A. 725. The petition for the writ of *certiorari* will be dismissed.

The question whether the appeal is premature has been settled in the case of *Lee v. State*, 161 Md. 430, 157 A. 723, where the court dismissed a petition as upon a writ of error to have a reversal by this court of the trial

court's selection of a place for the trial of a cause. In so doing, the Court said:

"But action upon that question at this stage of the cause seems clearly barred by the rule that this court cannot take up cases from the trial courts piecemeal. Its jurisdiction is limited to the reviewing of final actions of the trial court."

The State points out that in spite of the dismissal of the petition in the Lee case, the court did review the question for the benefit of the trial court and indicated in no uncertain terms what it thought the lower court should do. It asks that we do the same in this case because of the importance of the question and because the State has no way of bringing it up after final judgment. If the appellees secure the copies of the confessions they desire and are subsequently tried and acquitted, there can be no appeal by the State. *State v. Shields,* 49 Md. 301; *State v. Rosen,* 181 Md. 167, 28 A. 2d 829; *State v. Lingner,* 183 Md. 158, 36 A. 2d 674. The only way the question might be raised would be by an order of a trial court refusing to grant such relief as is asked in this case, and a subsequent conviction. In such a case, a convicted party could appeal and raise the question. That situation, however, applies to a great many preliminary matters in criminal cases, and, of itself, it is not sufficiently important for us to disregard the long-established rule above quoted. The appeal in No. 114 must also be dismissed.

We have occasionally given our views on the questions raised in a dismissed appeal because of the great public importance of the issue involved. We think this is such a case, evidenced by the fact that not only are the Attorney General and the State's Attorney of Baltimore City urging the decision, but we have been asked by the State's Attorneys of thirteen of the twenty-three counties to permit them to intervene as *amici curiae.* The larger number of these officials have adopted the State's brief in this case, but five of them have filed separate briefs of their own. In view, therefore, of the extensive

interest shown by the prosecuting officers of the State, and of the request of the Attorney General, we have determined to express our views upon the question involved in the Haas-Hatgimisios appeal.

This question is not nearly so broad as some of the counsel involved attempt to make it. It is simply: Did the Criminal Court have power in its discretion to require the State to furnish counsel for appellees with copies of the written confessions which the State had obtained from these appellees and which the State could presumably use in the trial? We are not concerned here with questions involving books, papers, documents, or tangible objects obtained from, or belonging to, the defendants, or obtained from others by seizure or by process, which are the subject of the Federal Rule for Criminal Procedure No. 16, 18 U. S. C. A. following section 687. Nor are we concerned with memoranda, oral statements made by a defendant or statements made by other defendants to an indictment or by prosecution witnesses. There is no occasion, and, in our opinion, it would be improper for us to lay down a general rule covering all possible cases. So many varieties of situations may arise that this Court should not attempt to imagine them all, and to pass upon them without full and complete argument in each differing case. We therefore confine ourselves to the single issue presented on this appeal as outlined above.

The State earnestly contends that no such power exists at common law, either in civil cases or in criminal cases, and that, while the right of discovery has been given in civil cases by statute and by the rules of this court, the latter were passed in pursuance of an act which specifically denied the right of this court to make rules in criminal cases. It may be here observed that while this statement is correct, the constitution of the State has since been amended, and the right to make rules in criminal cases (although not yet exercised) has been given this court in broad terms by section 18A of Article IV. It is further urged that while the precise ques-

tion has not been presented to this court, there has been an intimation of it in search-warrant cases where the court refused to approve the practice of the making of a motion by an accused to refrain from using certain articles seized by the police, and directing their return. The Court said: "Such practice is founded upon no statute of this State, nor is it supported by precedent to justify its propriety. And we may add that we see no reason for adopting it and thus compelling the State's witnesses in advance of a trial upon its merits to disclose to the prisoner the information which they possess pertaining to this case, which information is certain to be developed during the progress of the trial." *Sugarman v. State,* 173 Md. 52, 195 A. 324, 326. This quotation, in part, was repeated in a later case with the explanation and addition: "The statement was intended as an adjudication in effect excluding the practice from the courts of the State. And proceeding contrary to it in the present case was an error requiring a reversal of the judgment." *State v. Mariana,* 174 Md. 85, 197 A. 620. But these two cases refer to entirely different situations from the one before us, and in no sense control our conclusion here.

As authority for the contention that at common law there was no right of inspection of documents before trial of the accused, the State cites *Wigmore on Evidence,* 3d Ed., Vol. VI, sec. 1859g; *Rex v. Holland,* 4 Durn & East (Eng.) 691, 4 Term Rep. 691, 100 Eng. Reprints 1248; *People ex rel. Lemon v. Supreme Court of New York,* 245 N. Y. 24, 156 N. E. 84, 52 A. L. R. 200; *People v. Bermijo,* 2 Cal. 2d 270, 40 P. 2d 823; *Currie v. State,* 102 Tex. Cr. R. 653, 279 S. W. 834; *State ex rel. Robertson v. Steele,* 117 Minn. 384, 135 N. W. 1128, Ann. Cas. 1913D, 343; *State v. Yeoman,* 112 Ohio St. 214, 147 N. E. 3; *State v. Dallao et al.,* 187 La. 392, 175 So. 4; *People v. Parisi,* 270 Mich. 429, 259 N. W. 127; *Davis v. State,* 99 Tex. Cr. R. 517, 270 S. W. 1022; *State v. Kupis,* Del. O. & T., 7 W. W. Harr. 27, 179 A. 640; *Santry v. State,* 67 Wis. 65, 30 N. W. 226; *Abdell v. Commonwealth,* 173 Va.

458, 2 S. E. 2d 293; *State v. Livsey, et al.*, 190 La. 474, 182 So. 576; *People v. Parkinson*, Gen. Sess., 43 N. Y. S. 2d 690; *Commonwealth v. Giacomazza*, 311 Mass. 456, 42 N. E. 2d 506; *State v. Furthmyer*, 128 Kan. 317, 277 P. 1019; *Commonwealth v. Noxon*, 319 Mass. 495, 66 N. E. 2d 814.

This formidable array of authorities supports the common law theory, but the effect is somewhat diminished by a careful examination when the precise question before us is considered. The early English case of *Rex v. Holland, supra,* was an application by one indicted to inspect the evidence contained in a report of a board of inquiry of the East India Co. which he expected to be produced against him at his trial. Lord Kenyon, C. J., held that there was no principle or precedent to warrant the granting of the application and "* * * if we were to grant it, it would subvert the whole system of criminal law." Ashhurst, J., in the same case, said that it was never conceived to be necessary or fit that a defendant should receive intelligence of the particular evidence by which the charge against him was to be made out. Buller, J., said that the court had no discretion but must proceed according to the act of parliament which said nothing to that effect. Grose, J., said that to assume a discretionary power would be "dangerous in the extreme." This case was decided in 1792, but it does not seem to have always been given by the *nisi prius* courts, the full effect claimed for it. See *Rex v. Harrie* (decided in 1833), 6 Carr. & Payne, 105. However, the modern system in England is that an accused is not only permitted to see his confession, but the bulk of all of the evidence produced against him. He is taken before a magistrate promptly after arrest and witnesses cannot ordinarily be called against him at his trial who were not examined before the magistrate. Wigmore, Vol. VI, paragraph 1850, p. 394.

The Lemon case, (New York) *supra* [245 N. Y. 24, 156 N. E. 86], decided by Judge Cardoza, had to do with unsigned admissions which were inadmissible at the trial.

The court declined to require the production, but said, "The decision of this case does not require us to affirm or deny the existence of an inherent power in courts of criminal jurisdiction to compel the discovery of documents in futherance of justice. The beginnings or at least the glimmerings of such a doctrine are to be found * * * in courts other than our own." And later, after a discussion, "We leave the question open, for if the power exists at all, this case is not within it."

The Bermijo case (California), *supra,* had to do with private notes and memoranda made by the district attorney of questions asked of the defendant. The Currie case (Texas), *supra,* was a written statement from one of the state's witnesses, not from the defendant. The Robertson case (Minn.), *supra,* was concerned with a statement made by a man indicted for arson to the state fire marshall. The lower court directed the county attorney to give him a copy of it and the Supreme Court reversed on the strength of *Rex. v. Holland.* This was decided in 1912 and undoubtedly supports the State's theory here. That case states as its reason a fear which seems to actuate the appellant and the prosecuting attorneys in the case before us, namely, that if a defendant may compel the exhibition of his own testimony or confession, "* * * there would be equally good reason to call on the county attorney to disclose, before the trial, all the evidence that he may have against the defendant." As we have shown, the practice feared is the one now used in England without apparently producing any of the dire results expected or anticipated by the Minnesota court.

In the Yeoman case (Ohio), *supra,* the lower court permitted the defendant to inspect and make a copy of an alleged confession by him. The Supreme Court of Ohio reversed this (1925). However, in a later case, decided in 1940 (*State v. Cala,* 35 N. E. 2d 758), the Court of Appeals of Ohio said that the Criminal Code had changed the rule, and that now, it was a matter of the discretion of the trial court, and the review by the appellate court was limited to a determination whether there had been

an abuse of discretion. In the Dellao case (La.), *supra,* the trial court refused inspection of confessions, etc., and this ruling was upheld by the Supreme Court of Louisiana. This was in 1937. This case (and also the Livsey case, La., *supra*) was overruled in 1945 by the case of *State v. Dorsey,* 207 La. 928, 22 So. 2d 273, which is perhaps the most sweeping decision in this country on the right of inspection. That case, after stating that a written confession of a defendant is not a public document within the meaning of an act which provides for the examination of such document, discussed the *Rex v. Holland* case, *supra,* and some of the cases from other states cited by appellant here in its brief, as well as the views expressed by Professor Wigmore, and decided that under the provisions of the Constitution of the United States and of Louisiana, counsel for an accused was entitled to a pre-trial inspection of the latter's written confession as a matter of right.

In the Parisi case (Mich.), *supra,* the defendant asked for his own statement and a statement made by a witness. This case seems to support the position of the State, as does also the Davis case, *supra,* from Texas, and the Kupis case, *supra,* from Delaware. In the Santry case (Wis.), *supra,* a party indicted for murder wanted a copy of the confession made by a co-defendant which implicated him. This, of course, is not the question before us, as such confession would not be admissible here in evidence against the defendant demanding it. In the Abdell case from Virginia, defendant wished to examine notes written by him to his wife in a diary which he had kept. The Virginia court declined to permit this, saying no authority was cited to sustain it and quoted 14 Am. Jur. 915, which states "as a *general rule* the accused is not, *as a matter of right,* entitled to have evidence which is in possession of the prosecution for inspection before trial." (Italics supplied) The Virginia court said this, in its opinion, was the proper rule. It drew no distinction in its discussion between a demand as a matter of right, or a request directed to the discretion of the lower court,

nor did it distinguish between confessions and other evidence. It commented on the great annoyance to which a different rule would subject the attorney for the commonwealth, and said it would lead to the probable destruction or loss of material evidence. It said such a rule would "subvert the whole system of criminal law." The rule it was discussing was clearly the granting of the request made as a *matter* of *right*.

In the Giacomazza case (Mass.), *supra,* the defendant moved to be furnished, among other things, with a transcription of the evidence furnished to the grand jury and a copy of the confession made by his co-defendant. The court declined to permit him to have the transcript or the confession. This case is not strictly in point here. The latest Massachusetts case is *Commonwealth v. Noxon,* 319 Mass. 495, 66 N. E. 2d 814, decided in 1946. In that case, the defendant asked, among other things, that he be furnished a copy of the stenographic record of the formal statements made by him and his wife at the police station. The court below declined to grant these motions and the Supreme Court said that there was no rule or law which required the Commonwealth to do that, citing *Commonwealth v. Jordan,* 207 Mass. 259, 93 N. E. 809. The Court, however, said "The judge did not err in these matters. It was within his discretion to grant or deny the motions." In the Furthmyer case (Kansas), the application seemed to have been made under a section of the statute and the court said that this did not apply to criminal law and the defendant was not entitled to compel an inspection of statements made by him.

The appellees contend that the great weight of modern authority recognizes the power of the court to require the state to make available for inspection by counsel for an accused evidence which the state intends to use in the trial of the case. This statement is broader than the question before us. The appellees contend that this is an inherent power possessed by a court which it can exercise in order to insure justice. They cite as authorities

the Dorsey case, *supra,* Vol. 20 Tulane Law Review, 133; *State v. Tippett,* 317 Mo. 319, 296 S. W. 132; *People v. Gerold,* 265 Ill. 448, 107 N. E. 165, Ann. Cas. 1916 A, 636; *United States v. Rich,* 6 Alaska 670; *People v. Kresel,* 142 Misc. 88, 254 N. Y. S. 193; *People v. Warge,* 149 Misc. 461, 268 N. Y. S. 400; *People v. Gatti,* 167 Misc. 545, 4 N. Y. S. 2d 130; 7 *Fordham Law Review,* 449; *State ex rel. Andrews v. Superior Court of Maricopa County,* 39 Ariz. 242, 5 P. 2d 192; *Daly v. Dimock,* 55 Conn. 579, 12 A. 405; *Cramer v. State,* 145 Neb. 88, 15 N. W. 2d 323; *Padgett v. State,* 64 Fla. 389, 59 So. 946, Ann. Cas. 1914B, 897; *State v. Morrison,* 175 Wash. 656, 27 P. 2d 1065; *State v. Clark,* 21 Wash. 2d 774, 153 P. 2d 297; *State v. Cala* (Ohio App.), *supra.* There exists no need for an extensive synopsis of these authorities. They support in general the theory of the appellees that it is within the power of the trial judge to approve or refuse the inspection.

There can be no doubt that the recognition of the right in a trial court to permit the defendant to examine his confession in advance of the trial was not recognized at common law. But law is a growth and a great many matters, commonplace to us now, were not thought of many years ago. In this country we have not gone so far as they now have in England, where grand juries have been abolished and in their place has come about the pre-trial procedure, already outlined, by a committing magistrate. Nevertheless, the tendency in the courts of this country is to permit discretion in the trial judge. The argument made against any such discretion is based upon a fear that the State, which is charged with the prosecution of crime, may be hampered in its duty by the disclosure of its evidence to those charged with offenses. Whatever merit that argument has as applied to a situation where it is contended that the accused has a *right* to inspect the evidence, it has no application, we think, to a situation where the trial judge in each case and on each application, determines what should be done in the interest of justice. There are cases in which it

would be clearly unjust to deny such an application and, on the other hand, cases are conceivable in which it might improperly hamper the prosecution to grant such an application. We do not understand that the court below decided that the appellees were entitled to this disclosure as a matter of right. When he was considering the application of Vicks and Langham, he said that he would direct that counsel have the right, not as a matter of grace or as a matter of favor from the State's Attorney's office, to examine statements. In that case, as we have already stated, the State's Attorney's office offered to give and did give to counsel for Vicks and Langham, copies of their statements, but our understanding of Judge Smith's opinion was that he wanted them given by virtue of an order of court. He was not discussing the question of whether the applicants had the right to demand such an order of court.

It is our conclusion that such an application as the one we are now considering should be left to the discretion of the trial court, not to an unlimited discretion but to a discretion subject to review if abused. It is unfortunate that no method is now provided that such a review can be had before trial. In New York, there is a procedure, adopted in the Lemon case, *supra*, by which a writ of prohibition was granted, restraining the order of the trial court. In this way the question was raised in the appellate court before trial. We have no such practice in this State, and this fact should make the trial judges more careful in considering applications. We are not impressed by the fear of the prosecuting attorneys that the exercise of such discretion will change the whole practice of criminal law in this State, or will make the securing of proper convictions more difficult to obtain. It has not apparently had that effect elsewhere and we see no reason why it should have it here. On the other hand, there seems to be a measure of elemental justice in permitting one accused of crime to see a confession alleged to have been made by him, which he expects to be produced against him at his trial. Confessions are not

always written exactly as they are made, nor is the most meticulous care always displayed by the police authorities in obtaining and transcribing them. The trial court can be made aware of the particular circumstances surrounding a confession in any particular case, and then determine whether it is in the interest of justice that the defendant should see a copy of it before trial.

For the reasons stated earlier in this opinion, the petitions for writs of *certiorari* and the appeals in both cases must be dismissed.

> *Petitions for writs of certiorari dismissed.*
> *Appeal in No. 114 dismissed. Appeal*
> *in No. 115 dismissed.*