WILLIAM BLAKE *v.* STATE OF MARYLAND

[No. 726, September Term, 1971.]

*Decided July 6, 1972.*

The cause was argued before THOMPSON, MOYLAN and GILBERT, JJ.

*John J. Garrity* for appellant.

*David B. Allen, Assistant Attorney General,* with whom

were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Eugene Muskus, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

William Blake, the appellant, was convicted by a jury in Prince George's County of unlawfully distributing a proscribed narcotic drug, to wit, heroin. Blake was sentenced by Judge William B. Bowie to a term of 6 years under the jurisdiction of the Department of Correctional Services.

Blake here assigns four reasons why the judgment of the trial court should be reversed, the reasons being:

I. A motion to dismiss and to suppress the evidence should have been granted because of an unreasonable time lag between the offense and Blake's apprehension. The time lag allegedly "fatally impaired" Blake's ability to defend himself and constitutes a denial of due process.

II. That he was not afforded proper discovery.

III. The trial judge erred in admitting into evidence the aluminum foil packets of heroin in view of a break in the "chain of custody."

IV. The evidence was insufficient to sustain the conviction.

Trooper William S. Dorsey of the Maryland State Police testified that at 2:00 p.m. on April 6, 1971, he was in the vicinity of Eastern Avenue and 61st Street, in Prince George's County. The trooper was in plain clothes. He met Blake and purchased from him two aluminum foil packets of heroin at $3.00 each. The trooper did not arrest Blake at that time because he felt that to do so would impair other investigations being conducted by the trooper. Blake was not indicted until July 20, 1971. The arrest was actually made on August 3, 1971.

A chemist testified that he analyzed the contents of the two aforementioned aluminum foil packets and found the substance contained therein to be heroin. There was

testimony relative to the "chain of custody" which we shall hereinafter discuss in more detail.

The appellant, Blake, in his testimony, denied making the sale to the trooper and denied knowing the trooper except to the extent that he had seen him previously when he, Blake, was in court as a witness in another proceeding.

## I.

The appellant contends that the trial court should have granted his motion to dismiss "on the grounds that the time lag between the alleged offense and complaint resulted in the Appellant being unable to defend himself." In support of his contention, appellant points to the fact that the offense occurred on April 6, 1971. No indictment was handed down until July 20, 1971, and service of process was not effected until August 3, 1971. This period of time encompasses a lapse of 119 days between the time of the offense and the actual arrest, and a total of 105 days between the offense and indictment. To buttress his argument, appellant relies solely upon the case of *Ross v. United States*, 349 F. 2d 210 (D. C. Cir. 1965). In *Ross*, there was a delay of 7 months between the time of the offense and the date that the complaint was lodged against the appellant Ross. The Court noted that the police officer, when called to testify, had refreshed his recollection of the incident by reference to his "contemporaneous entries in a notebook" while in the instant case the "Appellant had no notebook, and, although he denied making the sale, he was unable to account in any detail" for himself with respect to the time and place in question because of an asserted lack of recollection and of means for reconstruction of the day involved. Trooper Dorsey, at the trial of the case, now before us, testified that he had refreshed his memory by a reference to notes that he made at the time of the commission of the offense. The similarity between *Ross* and the present case ends with the reference by the trooper to his notes, because, unlike *Ross*, the appellant testified on direct examination as follows:

"Q. Can you tell the members of the jury where you were on the 6th of April?
A. Home.
Q. Tell them how you can say you were at home and what circumstances caused you to remember that?
A. I was home taking care of my children. My wife was working.

* * *

"Q. Is there any other way that you can identify to your exact location at two o'clock in the afternoon on the 6th of April, 1971?
A. By my wife.
Q. Because of your taking care of the children?
A. Yes, sir.
Q. Do you remember that specific date?
A. No, sir."

The appellant also testified that his construction job had come to an end, so that during April, 1971, while his wife was working, he stayed home and took care of the children.

We rejected the rationale of *Ross* in *Brown v. State,* 1 Md. App. 571, 574 (1967). There we said:

"While that case [*Ross v. United States*] could be distinguished on its facts, *it does not represent the law of this state.* We find that there was ample reason for the officer to delay making the arrest * * *." (Emphasis supplied).

In *Jones v. State,* 3 Md. App. 616, 618 (1968), we said:

"* * * in *Brown* * * * the evidence showed that the delay in procuring the defendant's arrest on a warrant was occasioned by the existence of undercover work which would have been jeopardized had an earlier arrest been made. We hold here, as we did in *Brown,* that the delay in making the arrest was not unjustifiable under the circumstances. In so concluding, we have

considered *Ross v. United States,* 349 F. 2d 210 (App. D. C.), upon which appellant relies, but find it inapposite under the facts of the present case."

In the instant case we hold, as we did in *Brown* and *Jones,* that the delay in making the arrest was not unjustifiable in view of the trooper's testimony that to have made the arrest on April 6th "would have hampered efforts to apprehend other violators."

This Court in *Hamilton v. State,* 14 Md. App. 582, 589 (1972) enunciated a two-pronged test to be met by an accused charging a prejudicial delay by the State in effecting an arrest, when we said:

"We can only conclude that with respect to pre-accusation delay the burden is on the defendant to demonstrate violation of due process. He must show actual prejudice to the conduct of the defense *and* that the prosecution intentionally delayed to gain some tactical advantage over him or to harass him. The real possibility of prejudice inherent in any extended delay is not enough." (Emphasis supplied).

See also *United States v. Marion,* 404 U. S. 307, 92 S. Ct. 455, 30 L.Ed.2d 468 (1971).

Here appellant has made no showing of actual prejudice to the conduct of the defense, nor has he demonstrated that the prosecution "intentionally delayed to gain some tactical advantage over him or to harass him."

## II.

Appellant next argues that he was not afforded proper pretrial discovery in three respects:

a) He was misled as to the time of the occurrence.

b) He had demanded a copy of any statements made by the appellant and the State had represented that no such statements were made.

c) The State had supplied the name of an expert wit-

ness, a chemist by the name of John Miller, but actually used the testimony of a different chemist, Gene V. Tracey.

a) In the appellant's pretrial motion to suppress the evidence, his then attorney advised the court that the "State's Attorney's office in answer to a motion for discovery resulted in us being given the information that this alleged offense occurred on April 6, 1971, at two o'clock in the morning." The Assistant State's Attorney denied that he had informed the appellant's counsel that the offense had occurred at 2:00 a.m., but asserted that it occurred at 2:00 p.m. This information was allegedly related to appellant's defense attorney in "informal discovery proceedings." Rules 715 and 728 adequately protect an accused in criminal causes by affording him both a bill of particulars and discovery. Proper utilization of the Rules would have precluded the possibility of a misunderstanding concerning the exact time of the alleged offense. Judge Bowie was not persuaded by the appellant's claim and so ruled. We have carefully examined the record and are unable to say that in so doing Judge Bowie was in error. Appellant testified with specificity as to his whereabouts on the date and at the *time* of the offense, and we fail to see where he has been injured by the confusion as to the time of the offense. Additionally, we are unable to say, on the record before us, whether the appellant was misled by the State or simply misunderstood the Assistant State's Attorney.

b) Appellant argues that although in his "Motion for Discovery and Inspection" he had demanded "Copies of all statements, memoranda, or transcripts of any state- ments made by this defendant, * * *" and "Copies of any memoranda or summaries of any oral statements which relate to the subject matter of this case, made by the defendant, * * * to any agent of the State or to any police officer, or to anyone acting in the capacity of a law enforcement officer," the State replied, "None," when in fact there was such a statement. Appellant was advised, shortly prior to the actual trial, of the State's intention to have the trooper testify that at the time of the sale of

the heroin by the appellant, the appellant told the trooper that the purchase price would be $3.00 a package. The testimony developed as follows:

"Q. Did you make any inquiry of Mr. Blake as to the type of substance that you were intending to buy sir?
A. No. I made it known what I wanted and I inquired into the price.
Q. I see. And what was the price that Mr. Blake mentioned to you for heroin?
A. The price was three dollars per package.
Q. Three dollars per package?
A. Yes."

Appellant argues that his ability to defend himself was impaired by the non-disclosure through discovery proceedings of the "oral statement" as to the purchase price per packet. We find no merit in this contention. We believe that the "Motion for Discovery and Inspection" called for statements, confessions or admissions obtained *after* completion of the crime and not those that occurred during the course of the commission of the crime. We think that the trooper's testimony that the purchase price would be $3.00 per packet was a reiteration of part of the *res gestae* and not within the ambit of the "Motion for Discovery and Inspection." We find *Smith v. State,* 4 Md. App. 146 (1968), relied on by the appellant, to be inapposite. Appellant knew that he was charged with selling heroin and he further obviously knew that some conversation, of necessity, would have ensued between the appellant and the buyer in order to effect the sale. We do not believe appellant was misled or put in such a position that his ability to defend himself was impaired by his not being advised as to the officer's proposed testimony that the purchase price would be $3.00 per packet. Rule 728 addresses itself to statements, oral or written, inculpatory or exculpatory, made by an accused to an agent of the State after, the completion of the crime.

c) Appellant next argues that the State's answer to

discovery that one chemist was going to be used to testify when actually a different chemist appeared "severely impaired" his ability to defend himself. He says that had he known that the testimony of Tracey (the chemist who actually did testify) "was to be inconsistent with that of Trooper Dorsey's with relation to the date of delivery of the substance" which Tracey had examined and found to be heroin, then the appellant could clearly have "established his innocence." We view the matter differently. Tracey testified that the aluminum foil packets that he examined contained heroin. He stated that the packets were apparently received by another chemist, Miller, on September 9, 1971, according to the date and initials placed upon the envelope. Tracey did not personally see the packets delivered, nor did he base his testimony on anything other than what he observed on the packets. He, Tracey, physically examined the contents of the aluminum foil packets which he found to be in a sealed envelope on September 20, 1971.

Tracey's testimony would appear, insofar as the conflict in the dates is concerned, to be more favorable to appellant than damaging.

Rule 728 provides no sanctions for failure to include the name on the list of witnesses furnished by the State of a witness who will testify for the State in its case in chief. *Jones v. State,* 5 Md. App. 180 (1968); *Jackson v. State,* 8 Md. App. 260 (1969); *Brunson v. State,* 9 Md. App. 1 (1970).

### III.

During the course of the trial, Trooper Dorsey stated that after he had purchased the two aluminum foil packets containing what he believed to be heroin from the appellant, he placed the same in the evidence room at the Pikesville State Police Headquarters. The aluminum foil packets were placed in an envelope properly marked and personally sealed by Trooper Dorsey. Dorsey then testified that he took the envelope on September 20, 1971 to the chemist to be analyzed. The chemist, Tracey, testified,

as we have noted, that the envelope was actually received by his co-worker, John Miller, on September 9, 1971. Appellant seizes upon this apparent discrepancy to charge a broken link in the chain of custody. He cites *Breeding v. State,* 220 Md. 193 (1959), where the Court of Appeals held:

"The question is one of reasonable probability that no tampering occurred."

Appellant argues that there is not only a probability that other police officers had access to the evidence, but "they did in fact have access to the evidence." He apparently gleans this latter assertion from the fact that the heroin placed in the sealed envelope by Trooper Dorsey was kept in an evidence room to which other officers had access, and the testimony of the chemist, Tracey, that the heroin was received for analysis in the office of the chemist some 11 days before Trooper Dorsey says that he took it there. Appellant states that the heroin should not have been received into evidence over his objection.

Judge Henderson (later Chief Judge), speaking for the Court of Appeals in *Nixon v. State,* 204 Md. 475, 482 (1954), said:

"It is generally recognized that preliminary testimony that the condition of the article offered remains the same is necessary or desirable. 2 *Wharton, Criminal Evidence* (11th ed.) § 757. There is an interesting discussion of the problem in the concurring opinion of Ellison, J. in *State v. Myers,* 172 S.W.2d 946 (Mo. 1943). Wigmore indicates that there is a natural inference or presumption of continuance in the same condition which varies in each case with the nature of the subject matter and the time element. 2 *Wigmore, Evidence* (3d ed.) § 437-(1). However, as pointed out in the *Blake [v. State,* 157 Md. 75] case, the true rule is simply

one of 'proper caution' to require preliminary
proof, where available, of what may properly
be shown by inference."

Trooper Dorsey testified that he placed the two alumi-
num foil packets in an envelope and sealed the envelope.
He made the necessary identifying marks upon the ex-
terior of the envelope. Mr. Tracey, the chemist, testified
that the envelope upon which he worked on September
20, 1971 was unopened when received, and that he opened
it. The fact that Miller's initials and the date of Sep-
tember 9, 1971 were upon the envelope when received
by Tracey does not, in our view, remove the "reasonable
probability that no tampering occurred." *Breeding v.
State, supra.* At best, a question of credibility of wit-
nesses arose in the State's case, and that question was
for the trier of the facts, the jury, to determine. *Collins
v. State,* 14 Md. App. 674 (1972) ; *Braxton v. State,* 11
Md. App. 435 (1971) ; *White v. State,* 8 Md. App. 51
(1969) ; *David v. State,* 1 Md. App. 666 (1967). The
jury's verdict is indicative of its refusal to resolve the
credibility question in favor of the appellant.

## IV.

Lastly, appellant argues that the evidence was insuf-
ficient to sustain the conviction.

We have repeatedly stated that the test for sufficiency
of the evidence is whether the evidence, if believed,
shows directly or supports a rational inference of the
facts to be proved, from which the jury could fairly be
convinced, beyond a reasonable doubt, of the defendant's
guilt. *Young v. State,* 14 Md. App. 538 (1972) ; *Hunt v.
State,* 12 Md. App. 286 (1971) ; *Ott v. State,* 11 Md. App.
259 (1971) ; *Williams and McClelland v. State,* 5 Md. App.
450 (1968) ; *Conway v. State,* 15 Md. App. 198.

We think the testimony showing (a) that the State
Trooper bought two aluminum foil packets from the
appellant at 2:00 p.m. on April 6, 1971, (b) that those
packets were placed in an envelope by the trooper, and

then the envelope was sealed, (c) the trooper placed identifying marks upon the envelope as to the time, date, and place of purchase, as well as the contents thereof, (d) the trooper identified the appellant as the person from whom he bought the heroin, (e) the packets were analyzed in the Baltimore Police Department laboratory and found to contain heroin, (f) the envelope containing the packets when received at the Baltimore Police laboratory was still in a sealed condition, (g) the identification at the trial by the trooper of the envelope containing the packets, and (h) the identification by the chemist of the packets as being the ones taken by him from the envelope and found to contain heroin, was sufficient to sustain the conviction and simultaneously weld the alleged defective link in the chain of custody.

*Judgment affirmed.*