492 A.2d 295

David Wade JENNINGS

v.

STATE of Maryland.

No. 114, Sept. Term, 1984.

Court of Appeals of Maryland.

May 14, 1985.

Michael R. Braudes, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE and RODOWSKY, JJ., and CHARLES E. ORTH, Jr.,

**74**

Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

RODOWSKY, Judge.

This criminal case presents a discovery issue arising under former Maryland Rule 741, now MD.R. 4–263. The question is whether conversations between the accused and an undercover police officer in connection with a sale of supposed controlled dangerous substances are "statements" as the term is used in Md.R. 741 a 2 (b) and b 2. We shall hold that the words spoken by the accused were not a "statement" within the meaning of those sections of Md.R. 741.

Petitioner, David Wade Jennings (Jennings), was convicted in the Circuit Court for Somerset County of (1) distribution of a noncontrolled substance upon the representation that it was a controlled dangerous substance and of (2) conspiring with Janet Doris Wilson (Wilson) to distribute the substance. Trooper First Class William O. Murphy (Murphy) of the Maryland State Police, operating undercover, met with Jennings and Wilson at the parking lot of a fast food restaurant in Princess Anne at approximately 12:45 p.m. on Thursday, August 11, 1983. At that time he negotiated the purchase of certain controlled dangerous substances from the two conspirators. The exchange of drugs for cash was set for the same location at 6:30 p.m. that same day. At that time and place the conspirators returned and delivered to Murphy a quantity of substances which they represented to be controlled dangerous substances of the value of $9,200 at the prices agreed upon in the earlier meeting. Murphy began counting out the purchase price from a roll of currency. This was the signal for five other state policemen who had staked out the scene to arrest Jennings and Wilson. The substances delivered to Murphy were noncontrolled.

When the State filed its criminal information separately charging Jennings, it also filed a paper combining its auto-

matic furnishing of discovery with its request for discovery from Jennings. Paragraph three of that filing read:

The Defendant made no statements or confessions, oral or written, which are known to the State at the present time.

Jennings made no formal request for discovery from the State. At trial, when Murphy began to describe the conversation with Jennings in which Murphy negotiated the purchase of drugs, defense counsel objected based upon the above-quoted paragraph from the State's discovery filing. The prosecutor explained that paragraph three meant that the State did "not have a statement, either writing or an oral form, in which [Jennings and Wilson] admit participating in any type of crime." The trial court ruled that the filing did not preclude the witness "from repeating to me the conversation he says took place between him and the defendant."

Jennings' judgment of conviction was affirmed on his appeal to the Court of Special Appeals. In an unreported opinion that court rejected Jennings' contention that the trial court had erred in admitting Murphy's testimony describing the drug buy. Relying on *Blake v. State*, 15 Md. App. 674, 292 A.2d 780, *cert. denied*, 266 Md. 734 (1972), it held that "statements made ... as part of the criminal transaction in issue [and] which are part of the crime itself, are not remotely within the contemplation of Maryland Rule 741 b 2." We granted Jennings' petition for certiorari.

The portions of former Md.R. 741 with which we are concerned read:

Rule 741. Discovery and Inspection.

   a. *Disclosure Without Request.*

Without the necessity of a request by the defendant, the State's Attorney shall furnish to the defendant:

   . . . .

   2. Any relevant material or information regarding: (a) specific searches and seizures, wire taps and eavesdropping, (b) the acquisition of statements made by the

defendant, and (c) pretrial identification of the defendant by a witness for the State.

3. The State's Attorney's obligations under this section extend to material and information in the possession or control of members of his staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office.

b. *Discovery by the Defendant.*

Upon the request of the defendant, the State shall:

. . . .

2. Statements of the Defendant.

As to all statements made by the defendant to a State agent which the State intends to use at a hearing or trial, furnish the defendant: (a) a copy of each written or recorded statement and (b) the substance of each oral statement and a copy of all reports of each oral statement.

. . . .

5. Evidence for Use at Trial.

Produce and permit the defendant to inspect and copy any books, papers, documents, recordings, or photographs which the State intends to use at the hearing or trial, and produce and permit the defendant to inspect and photograph any tangible objects which the State intends to use at a hearing or trial.

When the State, absent any motion by Jennings, disclaimed that it had any statements from Jennings, the State was, in relation to Md.R. 741, disclaiming any obligation under § a 2(b) to furnish "relevant material or information regarding ... the acquisition of statements made by the defendant." We discussed the interrelationship of § a 2 and b 2 of Md.R. 741 in *White v. State*, 300 Md. 719, 481 A.2d 201 (1984). The discovery of contents of statements was governed by § b, and the automatic production required by § a of "material or information dealing with the circumstances in which a statement was obtained from the

accused by a State agent" triggered the running of the time under former Md.R. 736 b within which the defendant was to file a motion to suppress. *Id.* at 736, 481 A.2d at 209. In light of that interrelationship we said in *White* that "[t]he 'statements made by the defendant,' which are embraced within MD.R. 741 a 2, are statements made to a State agent which the State intends to use at trial." *Id.* at 733, 481 A.2d at 208. This language which our opinion in *White* read into Md.R. 741 a 2(b) is language expressly set forth in 741 b 2. Consequently, the issue presented concerns the meaning of "statement(s)" as used in both § a 2(b) and b 2.[1]

Jennings takes the position that his case falls literally within Md.R. 741 b 2 in that the State, on its direct examination of Murphy, sought to have him testify as to "statements" made by Jennings to Murphy, a State agent. To buttress this position Jennings cites a number of decisions of federal courts applying Fed.R.Crim.P. 16(a) as it stood in the period from 1966 to 1975. Prior to 1966 Fed.R.Crim.P. 16 did not speak of "statements" but permitted inspection and copying of "designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process...."

---

**1.** There was no conditional cross-petition for certiorari filed by the State. We therefore express no opinion on whether Jennings, under the facts of this case, properly preserved his point that the State violated its discovery obligations. It seems obvious that paragraph three of the State's discovery statement is predicated on a legal theory and not on either the State's belief that there were no conversations or the State's intent not to use the conversations at a hearing or trial. Undercover officer Murphy was the affiant on the Statement of Charges which specified a number of details from the Jennings-Murphy conversations so that there could have been no question of the State's position that conversations had taken place. Had Jennings desired discovery of the substance of those conversations and copies of any reports embodying them, he could have raised the issue of their discoverability by a timely motion under Md.R. 741 b. Likewise Jennings could have challenged the interpretation of "statements" implicit in the State's disclaimer by a motion to compel discovery pursuant to Md.R. 741 e 2. Either approach would, at a minimum, have been a better practice, if Jennings' goal was discovery, than an objection at trial to Murphy's unsurprising testimony.

As amended effective July 1, 1966, Rule 16(a) in relevant part provided that

the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government. . . .

While the federal rule stood in the above-quoted form, many federal courts held that the rule allowed the accused to be furnished copies of recordings made by the government of conversations in which the accused had participated while preparing for, or in the course of committing, the crime charged. *See, e.g., United States v. Walker*, 538 F.2d 266 (9th Cir.1976) (recording by undercover agent of drug transaction); *United States v. Bryant*, 439 F.2d 642 (D.C. Cir.1971) (drug transaction between accused and undercover agent; electronic surveillance and recording by other agents); *United States v. Crisona*, 416 F.2d 107 (2d Cir. 1969), *cert. denied*, 397 U.S. 961, 90 S.Ct. 991, 25 L.Ed.2d 253 and 397 U.S. 961, 90 S.Ct. 993, 25 L.Ed.2d 253 (1970) (mail and wire fraud; recordings made by counsel for victim of telephone conversations with accused); *United States v. Isa*, 413 F.2d 244 (7th Cir.1969) (attempted bribery of IRS agent; recording of telephone conversation and recording by electronic surveillance); *Davis v. United States*, 413 F.2d 1226 (5th Cir.1969) (fraudulent passing of counterfeit notes; informant's telephone conversation with accused recorded by government with consent of informant); *United States v. Rosenberg*, 299 F.Supp. 1241 (S.D.N.Y.1969) (attempted bribery of IRS agent; recordings of conversations between accused and agent); *United States v. Lubomski*, 277 F.Supp. 713 (N.D.Ill.1967) (same); *United States v. Iovinelli*, 276 F.Supp. 629 (N.D.Ill.1967) (same); *United States v. Leighton*, 265 F.Supp. 27 (S.D.N.Y.), *aff'd*, 386

F.2d 822 (2d Cir.1967), *cert. denied,* 390 U.S. 1025, 88 S.Ct. 1412, 20 L.Ed.2d 282 (1968) (same).

*United States v. Crisona, supra,* 416 F.2d at 114, undertakes to summarize many of these decisions and lists four bases for them. First, the language of Fed.R.Crim.P. 16(a) at that time was "unqualified in contrast to the limited definition of 'statement' in section 3500" of Title 18 of the United States Code, the Jencks Act. Second, "the Notes of the Advisory Committee indicate that the [1966] amended Rule was intended to apply even to pre-arrest statements made by a defendant during the course of his crime and was meant to broaden materially the scope of discovery available to a defendant,[4] . . . ." Footnote 4 explains the reference to be to a portion of the Notes commenting on subdivision (a)(1) where the Advisory Committee said that "[t]he defendant is not required to designate [the writings or recordings requested to be produced] because he may not always be aware that his statements or confessions are being recorded." Third, the *Crisona* court said "that [the pre-arrest, recorded] statement [made by the defendant during the course of his crime] is obviously of such vital importance to the defense that fairness compels its disclosure. . . ." The fourth basis was that "guilty pleas will thereby be encouraged."

We do not find the analysis of the above-cited federal decisions persuasive on the meaning of "statements" in the Maryland Rule under consideration. The background of Md.R. 741 reveals that "statements" was not intended to embrace utterances by the accused in the course of the crime. Prior to the first rules of procedure on the subject, *State v. Haas,* 188 Md. 63, 51 A.2d 647 (1947) had held that circuit courts in this state had inherent power, exercisable in their discretion, to require production by the state of a written confession. The earliest rule adopted by this Court under its constitutional rulemaking power which provided for discovery in criminal cases was addressed to the inspection and copying of documents or tangible objects seized from the defendant. The rule specifically included, how-

ever, "written statements by the defendant. . . ." General Rules of Practice and Procedure, Part Four, I, Criminal Rules of Practice and Procedure, Rule 5, 3 Md.Code (1951) at 4888. As a result of this Court's order adopting the Twelfth Report of the Rules Committee, old G.R.P.P. Pt. Four, I, Rule 5 was renumbered Rule 728, effective January 1, 1957, without textual change. Chapter 700, "Criminal Causes," of the Maryland Rules was completely rewritten in the Twentieth Report of the Rules Committee. That revision became effective January 1, 1962. Md.R. 728 a 2 in the 1962 revision enabled a circuit court, upon motion by the defendant and a showing of materiality and reasonableness, to order the State's Attorney

> [t]o furnish the defendant the substance of any oral statement made by him which the State proposes to produce as evidence to prove its case in chief, a copy of any written statement made by him, and the substance of any oral confession made by him.

*See* 9B Md.Code (1957, 1963 Repl.Vol.), Rule 728.

As adopted, the 1962 discovery rule was the product of compromise. A version of the Twentieth Report had been circulated in September of 1960 for public comment. In that version the discovery rule would have read in relevant part:

> Upon motion of a defendant, at any time after the filing of an indictment, the court shall order the State's attorney:
>
> . . . .
>
>     3. Defendant's Statements.
>
> To furnish the defendant copies of any written statement made by him and the substance of any oral confession or admission made by him which the State proposes to use at the trial.

In a letter dated February 27, 1961, to this Court, the State's Attorneys' Association expressed concern over many aspects of proposed Md.R. 728. With respect to the furnishing of "any oral confession or admission," the prosecu-

tors pointed out that "[i]t is commonplace for an apparently innocent remark of the defendant to assume the proportions of an 'admission' as the facts develop at trial." They noted that "[i]n few, if any, cases is the prosecution [*i.e.*, the State's Attorney] in frequent contact with the defendant between apprehension and indictment." The State's Attorneys asked that the rule provide for the production of only those confessions or admissions " 'which the State proposes to use at the trial in order to establish the case against the defendant'." By letter of May 17, 1961, the Rules Committee presented its position to this Court on each of the points raised by the prosecutors' association. Of significance for present purposes is that the Committee's May 17, 1961, discussions and proposals concerning discovery of utterances by an accused were in terms of "confessions and admissions."

At the Rules Committee meeting of June 23–24, 1961, the Chairman reported on a meeting with then Chief Judge Brune of this Court. The Chairman had been advised that the members of this Court had tentatively concluded that the criminal discovery rule "should not be substantially enlarged" but that the "provisions of the proposed new rule dealing with the furnishing of defendants' statements ... should be carried over into the new rule." The Rules Committee at that meeting drafted "an alternate Rule 728 embodying what the Committee understood the tentative preference of the members of [this] Court to be." With respect to oral statements that alternate is verbatim Md.R. 728 a 2 as adopted.

Consequently, the terminology, "oral statements," was introduced into the Maryland criminal discovery rule in response to the request that statements of the defendant be treated as proposed in the draft circulated for comment. "[A]ny oral statements" was substituted for "any oral confession or admission." It does not appear that the terminology "any oral statements" was intentionally selected for the purpose of making discoverable testimony of state agent witnesses to verbal acts forming part of the

crime. Such persons have personal knowledge of the words spoken by the defendant in the course of committing the offense charged. Confessions and admissions relate to past occurrences and are admissible through the person to whom they are made as hearsay exceptions deriving their trust-worthiness from the self-interest of the accused.

It should be noted that literalism was not the test applied when Md.R. 728, effective January 1, 1962, was under judicial construction. The language of that rule did not limit the "statements" discoverable under it, other than by the test of whether the State proposed to produce the statement as evidence to prove its case in chief. The rule did not expressly exclude discovery of statements made to private citizens. Nevertheless, a series of decisions of the Court of Special Appeals interpreted the "statements" re-ferred to in Md.R. 728 to mean statements made to a State agent. *See McDowell v. State*, 31 Md.App. 652, 358 A.2d 624, *cert. denied*, 278 Md. 727 (1976) (post-crime conversa-tion with witness); *Funderburk v. State*, 12 Md.App. 481, 280 A.2d 4, *cert. denied*, 263 Md. 713 (1971) (post-crime remark to accomplice's mother); *Smith v. State*, 4 Md.App. 146, 241 A.2d 728 (1968) (post-crime statement to witness); *Austin v. State*, 3 Md.App. 231, 238 A.2d 569 (1968), *rev'd on other grounds*, 253 Md. 313, 252 A.2d 797 (1969) (state-ment to victim during crime); *Boone v. State*, 3 Md.App. 11, 237 A.2d 787, *cert. denied*, 393 U.S. 872, 89 S.Ct. 161, 21 L.Ed.2d 141 (1968) (post-crime statement to accomplice); *Barton v. State*, 2 Md.App. 52, 233 A.2d 330, *cert. denied*, 248 Md. 733 (1967) (statements to accomplice before and during robbery).

The meaning of "statement" in old Md.R. 728 was also presented to the Court of Special Appeals in 1972 on facts highly analogous to those in the present case. *See Blake v. State, supra.* In response to Blake's motion for discovery of any memoranda of oral statements, the State replied that it had none. At Blake's trial on drug charges, an undercov-er police officer who had purchased a package of heroin from Blake was permitted to testify about his conversation

with Blake concerning price. Blake claimed this ruling was error. Chief Judge Gilbert, writing for the appellate court, said:

> We find no merit in this contention. We believe that the "Motion for Discovery and Inspection" called for statements, confessions or admissions obtained *after* completion of the crime and not those that occurred during the course of the commission of the crime. We think that the trooper's testimony that the purchase price would be $3.00 per packet was a reiteration of part of the *res gestae* and not within the ambit of the "Motion for Discovery and Inspection." ... Appellant knew that he was charged with selling heroin and he further obviously knew that some conversation, of necessity, would have ensued between the appellant and the buyer in order to effect the sale. We do not believe appellant was misled or put in such a position that his ability to defend himself was impaired by his not being advised as to the officer's proposed testimony that the purchase price would be $3.00 per packet. Rule 728 addresses itself to statements, oral or written, inculpatory or exculpatory, made by an accused to an agent of the State after, the completion of the crime. [15 Md.App. at 681, 292 A.2d at 783.]

Md.R. 741, with which we are concerned here, was the product of a revision of the Maryland Rules relating to criminal causes which was the subject of the Fifty-Third Report of the Rules Committee. That revision of former Chapter 700 became effective July 1, 1977. Records of the Rules Committee do not reflect any discussion addressed directly to the *Blake* interpretation. Those records do reflect that the Committee considered the scope of "statements" which should be discoverable. The Rules Committee had been presented with the Report and Recommendations to Implement the American Bar Association Standards for Criminal Justice (1974) from a Joint Committee of the Maryland Judicial Conference and the Maryland State Bar Association. This report recommended a rule under which the discovery of oral statements was coextensive with the

State's intent to offer them in evidence, that is, there was no recommended limitation to statements made to State agents. As ultimately adopted Md.R. 741 did not embrace that liberalization of the scope of discovery.

Because the Court of Special Appeals' 1972 *Blake* opinion was the only. Maryland appellate construction on the subject aspect of "statements" during the years preceding the 1977 revision of the criminal. rules, *Blake's* rejection of words spoken during commission of the crime as "statements" would have been the interpretation one would expect the circuit courts to have applied if that issue were presented for decision under old Md.R. 728. It would also have been the interpretation relied upon by prosecutors who chose to disclose no more than Md.R. 728 required. Under those circumstances any conscious intent to reject the *Blake* interpretation of "statements" as used in Md.R. 741 would have been expressed in explicit language.

Ultimately, of course, the issue is one of policy. It is an issue on which courts can differ. *Compare, e.g., United States v. Villa,* 370 F.Supp. 515 (D.Conn.1974) (holding that the electronically unrecorded conversation during a drug transaction between the accused and an undercover agent was discoverable under the 1966 version of Fed.R.Crim.P. 16 as a "recorded statement" because it was the subject of a written report by the agent), *with State v. Bacon,* 114 N.H. 306, 319 A.2d 636 (1974) (holding that conversations concomitant with the commission of the crime were not "statements" under New Hampshire's discovery rule).

Although the *Blake* interpretation is not binding on this Court and we recognize that the analysis of the history of Maryland criminal discovery rules set forth above does not compel this Court to hold that there was no discovery violation by the State in this case, there are a number of factors which dictate against attempting, by the vehicle of a decision in the case before us, any change in the *Blake* interpretation inherent in former Md.R. 741 and in current MD.R. 4–263.

The Supreme Court of the United States and Congress in 1975 changed the federal rules so that discovery of an unrecorded oral statement of the defendant which is to be offered by the government in evidence at the trial is limited to a statement made in response to interrogation by any person then known to the defendant to be a government agent.[2] Under a state rule tracking current FED.R. CRIM.P. 16 Jennings' conversation with Murphy would not be discoverable. At a minimum this would be because their conversation was not electronically recorded and because Murphy was not at the time known to Jennings to be a State agent.

Much the same policy has been adopted in New York. By 1979 N.Y. Laws Chapter 412, §§ 1–2, N.Y.Crim.Proc.Law § 240.20 (McKinney 1982) was repealed and reenacted so as, *inter alia,* to exclude from discovery oral statements of the defendant made "in the course of the criminal transaction, to a public servant engaged in law enforcement activity. . . ." This legislation alters the result obtained in a case like *People v. Zacchi,* 69 Misc.2d 785, 331 N.Y.S.2d 86 (1972) on which Jennings also relies.

Further, it is not necessary to construe "statements," either in former Md.R. 741 a 2 and b 2 or in present MD.R.

---

**2.** FED.R.CRIM.P. 16(a)(1)(A), as amended effective December 1, 1975, and insofar as relevant to the case before us, provides:

Rule 16. Discovery and Inspection

(a) Disclosure of Evidence by the Government.

(1) Information Subject to Disclosure.

(A) Statement of Defendant. Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged.

4–263(a)(2)(B) and (b)(2) in the fashion urged by Jennings in order to reach the result obtained in the federal cases like *United States v. Crisona, supra.* In those cases conversations with the defendant during the commission of the crime were recorded. In this State, recordings which the State intends to use at a hearing or trial were and are ordinarily discoverable, but as "recordings" and not as statements. *See* former Md.R. 741 b 5 and present MD.R. 4–263(b)(5).[3] And *see* Md.Code (1974, 1984 Repl.Vol.), § 10–408(g)(4) of the Courts and Judicial Proceedings Article relating to the inventory in wire tap and electronic surveillance cases.

Finally, the process involving the exercise by this Court of its constitutional rulemaking power is more appropriate to the resolution of the issue. We do not have before us any fact finding record which discloses the practice throughout this State. While a trial court presented with the issue for ruling on motion would undoubtedly have followed *Blake*, we do not know the extent to which prosecutors in some counties may have been furnishing voluntarily the substance of unrecorded conversations with undercover State agents had during the course of the crime. Nor do we know the extent to which other prosecutors might have been standing squarely on *Blake* or all of the reasons they might have for so doing. The rulemaking process is the better vehicle for obtaining that kind of information to assist in making a judgment on the competing arguments of fairness and practicality.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY DAVID WADE JENNINGS.

ELDRIDGE, Judge, dissenting:

I disagree with the majority's holding that the term "statement," as used in former Maryland Rule 741, now

---

**3.** At least one qualification on discovery of recordings is the protection of confidential informants reflected in former Md.R. 741 c 2 and present MD.R. 4–263(c)(2).

Maryland Rule 4–263, does not apply to an oral statement made by a defendant to an undercover State agent during the course of a crime.

The plain language of Rule 741 does not limit the defendant's discovery right to only those statements made to a State agent after a crime. The "background of Md.R. 741," which the majority relies upon in reading this limitation into the rule, does not support the majority's result. The 1977 revision of the rule was intended to liberalize the scope of discoverable statements. *Carr v. State*, 284 Md. 455, 397 A.2d 606 (1979). There is no indication in any of the reports, correspondence or minutes of the Court of Appeals Standing Committee on Rules of Practice and Procedure, or its Criminal Rules Subcommittee, of an intent that Rule 741 embody the decision of the Court of Special Appeals in *Blake v. State*, 15 Md.App. 674, 292 A.2d 780, *cert. denied*, 266 Md. 734 (1972). There is no indication that the Rules Committee was even aware of *Blake* when it recommended Rule 741 to this Court. I can state with a fair degree of certainty that this Court, sitting in its rule-making capacity, did not consider *Blake* when adopting the rule. The history behind Rule 741 clearly shows that the only intended restriction on the discoverability of oral statements was limiting discovery to those statements made to a State agent. *See White v. State*, 300 Md. 719, 481 A.2d 201 (1984). The majority, in reading into the rule a limitation that the statement be made after the criminal transaction, not only goes beyond the plain language of the rule, but ignores the rule's history.

Moreover, the out-of-state authority cited by the majority contradicts its holding. The majority cites two rules which are similar to Rule 741: the former federal rule and the former New York rule. Both were interpreted to include oral statements, such as the one in the present case, within the ambit of a defendant's discovery. *See, e.g., United States v. Crisona*, 416 F.2d 107 (2d Cir.1969), *cert. denied*, 397 U.S. 961, 90 S.Ct. 993, 25 L.Ed.2d 253 (1970); *People v. Zacchi*, 69 Misc.2d 785, 331 N.Y.S.2d 86 (1972). The majori-

ty offers no explanation for ignoring these interpretations of similar rules. The majority does point out that, subsequent to the interpretations of the similar rules, the jurisdictions involved enacted more restrictive rules. This, however, only serves to show that the majority is approaching the issue backwards, by implying the limiting language where it does not exist, and then inviting future rule-making to delete the limitation if desired.

It may well be desirable to limit the discoverability of oral statements made by a defendant to a State agent by restricting discovery to those statements made after the crime, or to a known State agent, or both. But any change in the rule should be made by this Court in its rule-making capacity and not in its adjudicatory capacity. Therefore, I respectfully dissent.