584 A.2d 164

**Shirley Mitchell BROWN**

v.

**STATE of Maryland.**

**No. 458, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 21, 1991.

524

H. Richard Duden, III (Alan Hilliard Legum, P.A., on the brief), Annapolis, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Argued before BISHOP, GARRITY and ROBERT M. BELL, JJ.

BISHOP, Judge.

Shirley Mitchell Brown appeals from his conviction after a jury trial in the Circuit Court for Anne Arundel County of distribution and conspiracy to distribute a controlled dangerous substance.

## ISSUES

Appellant presents the following issues on appeal:

I. Whether the trial court erred when it admitted into evidence, over the objection of counsel, a statement made

by defendant, notice of which was not provided to defense counsel prior to trial;

II. Whether the trial court erred in allowing evidence of appellant's narcotics transaction with Officer Young on March 7, 1988 and his subsequent conviction therefor;

III. Whether the trial court's refusal to strike for cause a venireman who indicated both that he would give more weight to the testimony of a police officer and that he was biased against blacks constituted reversible error;

IV. Whether the trial court erred in considering evidence of dubious reliability at sentencing; and

V. Whether the trial court erred in denying defense counsel the opportunity to respond to the trial court's remarks made prior to sentencing.

## FACTS

Appellant was tried for distribution and conspiracy to distribute cocaine on or about February 17, 1988. Both charges derived from an undercover purchase by Special Agent Kenneth Johnson of the Drug Enforcement Administration and Reginald Gray, a paid confidential informant. Johnson testified that he and Gray drove to Brooks Court in the Newton 20 area of Annapolis, Maryland. Gray identified appellant who was standing among a group of men repairing a car in the Brooks Court parking lot. Gray left the car, approached appellant, and had a short conversation. Gray returned to the car and Johnson drove the car farther down the parking lot. At the same time, Johnson saw appellant talk to another individual who then walked into apartment 805B of Brooks Court.

Johnson testified that approximately five minutes later, "an individual walked from the direction of the crowd where Mr. Brown was." This individual approached Johnson, who was seated in his car, and introduced himself as "Larry." Larry handed Johnson a package of white powder, later identified as cocaine, and stated that it cost $1,350.00. Johnson gave Larry $1,400.00. Larry returned to the group

of men, made an exchange with appellant, and then returned to Johnson's car and handed Johnson $50.00. During cross-examination, Johnson stated that he first noticed Larry as he was walking toward Johnson's car from the direction of apartment 805B.

Gray testified that he was with Johnson at Brooks Court in Annapolis on February 17, 1988 and that, after Johnson parked the car, Gray approached appellant and asked the price of an ounce of cocaine. Appellant told him $1,350.00. Gray returned to the car, relayed this information to Johnson and returned to appellant who instructed him to move the car farther down the parking lot. Gray entered the car, and Johnson moved it as instructed. Gray then testified that he saw appellant and his brother go into an apartment. When they came out, one of them approached Larry who was "a runner." Larry approached the car and handed an ounce of cocaine to Johnson. Larry returned to appellant and brought back $50.00 which he gave to Johnson. Gray acknowledged that he was compensated for his assistance.

Detective Todd Young of the Anne Arundel County Police Department testified that he and Detective Arthur Foote conducted surveillance on February 17, 1988 from a car in another section of the parking lot. Young testified that Larry was part of the group in the parking lot and that he had not observed anyone go into apartment 805B.

Young further testified, over objection, about a cocaine purchase on March 7, 1988, to which appellant pled guilty. The court granted a continuing objection pursuant to Md. Rule 4–323(b)[1] to any testimony regarding the March 7, 1988 incident on the grounds of surprise, failure of the State to provide discovery, and due process. The following

---

1. **Continuing Objections to Evidence.—**
   At the request of a party or on its own initiative, the court may grant a continuing objection to a line of questions by an opposing party. For the purposes of review by the trial court or on appeal, the continuing objection is effective only as to questions clearly within its scope.

exchange which occurred between the prosecutor and Officer Young is the statement at issue:

Q. Now, did he hand the drugs to you or did he hand the drugs to the CI [confidential informant]?

A. No, he handed the drugs to the CI.

Q. What did Mr. Brown say to the CI?

A. He told the CI the next time for him to do a deal by himself.

Q. Did Mr. Brown then have occasion to say anything to you?

A. Yes. He told me that it's not that—he said exactly, "It's not that you're not okay, I just don't deal with anybody new."

The State called three more witnesses whose testimony added nothing to the above facts. Appellant did not testify and did not call any witnesses.

## DISCUSSION

### I.

#### A. *The Statement*

Md. rule 4–263(b)(2) [2] provides:

(b) **Disclosure Upon Request.**—Upon request of the defendant, the State's Attorney shall:

\* \* \* \* \* \*

(2) *Statements of the Defendant.*—As to all statements made by the defendant to a State agent that the State intends to use at a hearing or trial, furnish to the defendant, but not file unless the court so orders: (A) a copy of each written or recorded statement, and (B) the substance of each oral statement and a copy of all reports of each oral statement.

"The major purpose of Md.Rule 4–263 and its predecessors ... is to assist the defendant in preparing a defense and to

---

**2.** Md.Rule 4–263 is derived from Md.Rule 741. Md.Rule 741 replaced Md.Rule 728.

afford protection from surprise." *Russell v. State*, 69 Md.App. 554, 564–5, 518 A.2d 1081 (1987), *citing Mayson v. State*, 238 Md. 283, 208 A.2d 599 (1965) and *Powell v. State*, 23 Md.App. 666, 675–6, 329 A.2d 413 (1974). Although Md.Rule 4–263(b)(2) includes the phrase "all statements," the courts have limited the required State disclosure.

In *Blake v. State*, 15 Md.App. 674, 292 A.2d 780, *cert. denied*, 266 Md. 734 (1972), appellant was convicted of unlawful distribution of heroin, and appealed arguing, *inter alia*, that he was not afforded proper discovery pursuant to former Md.Rule 728. Former Md.Rule 728 provided:

a. *Generally.*

Upon motion of a defendant and upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable, the Court, at any time after indictment, may order the State's attorney or other person pursuant to an order to be passed as provided by section b of this Rule:

\* \* \* \* \* \*

2. Defendant's Statements.

To furnish the defendant the substance of any oral statement made by him which the State proposes to produce as evidence to prove its case in chief, a copy of any written statement made by him, and the substance of any oral confession made by him.

\* \* \* \* \* \*

b. *Form of Order.*

An order under this Rule shall specify the time, place and manner of making the production, inspection, observations and of taking the copies and photographs and may prescribe such terms and conditions as are just.

Blake filed a Motion for Discovery and Inspection in which he demanded copies of any statements made by him to any

agent of the State.[3]   The State replied, "None," when in
fact the State intended to have a trooper testify that during
the alleged drug sale Blake told him that the purchase price
was $3.00 a package.   Blake argued that the non-disclosure
of this "oral statement" impaired his ability to defend
himself.   We disagreed.

> We find no merit in this contention.   We believe that
> the "Motion for Discovery and Inspection" called for
> statements, confessions or admissions obtained *after* com-
> pletion of the crime and not those that occurred during
> the course of the commission of the crime.   We think that
> the trooper's testimony that the purchase price would be
> $3.00 per packet was a reiteration of part of the *res
> gestae* and not within the ambit of the "Motion for
> Discovery and Inspection."   We find *Smith v. State*, 4
> Md.App. 146 [241 A.2d 728] (1968), relied on by the
> appellant, to be inapposite.   Appellant knew that he was
> charged with selling heroin and he further obviously
> knew that some conversation, of necessity, would have
> ensued between the appellant and the buyer in order to
> effect the sale.   We do not believe appellant was misled
> or put in such a position that his ability to defend himself
> was impaired by his not being advised as to the officer's
> proposed testimony that the purchase price would be
> $3.00 per packet.   Rule 728 addresses itself to state-
> ments, oral or written, inculpatory or exculpatory, made
> by an accused to an agent of the State after the comple-
> tion of the crime.

*Id.* at 681, 292 A.2d 780.

Subsequently, on facts highly analogous to *Blake*, the
Court of Appeals, in *Jennings v. State*, 303 Md. 72, 492
A.2d 295 (1985) held that conversations in which the defen-
dant negotiated for the purchase of illegal drugs were not

---

**3.** A series of decisions already "interpreted the 'statements' referred to
in Md.Rule 728 to mean made to a State agent." *Jennings v. State*, 303
Md. 72, 82, 492 A.2d 295 (1985) (citations omitted).

"statements" within the meaning of former Md.Rule 741.[4] The Court examined the history of former Md.Rule 728 and concluded that the discussions and proposals of the Rules Committee "concerning discovery of utterances by an accused were in terms of 'confessions and admissions.' " *Id.* at 81, 492 A.2d 295. Consequently, "[i]t does not appear that the terminology 'any oral statements' was intentionally selected for the purpose of making discoverable testimony of state agent witnesses to verbal acts forming part of the crime." *Id.* at 81–2, 492 A.2d 295. The Court supported its interpretation by quoting from our opinion in *Blake. Id.* at 83, 492 A.2d 295.

Md.Rule 741, the Court continued, was a revision of Md.Rule 728. Its developmental history revealed that the Rules Committee did not directly discuss *Blake* although it did consider the scope of "statements" which should be discoverable. *Id.* The Court concluded that because *Blake* was the only Maryland opinion on this subject during the years preceding the revision of the criminal rules that culminated in Md.Rule 741, "any conscious intent to reject the *Blake* interpretation of 'statements' as used in Md.Rule 741 would have been expressed in explicit language." *Id.* at 84, 492 A.2d 295. It was not and, therefore, "the *Blake* interpretation [is] inherent in former Md.Rule 741 and in current Md.Rule 4–263." *Id.*

This is not to be interpreted to mean that all statements made to a State agent during the commission of a crime are excluded from discovery. For example, a pre-arrest conversation between the accused and a police officer during

---

**4.** Md.Rule 741 provided in part:

    b. *Discovery by the Defendant.*
    Upon request of the defendant, the State shall:
        \*     \*     \*     \*     \*     \*
    2. Statements of the Defendant.
    As to all statements made by the defendant to a State agent which the State intends to use at a hearing or trial, furnish the defendant: (a) a copy of each written or recorded statement and (b) the substance of each oral statement and a copy of all reports of each oral statement.

transportation of a stolen vehicle was held to be discoverable. *Bailey v. State,* 303 Md. 650, 654, 496 A.2d 665 (1985). Moreover, *Blake* and *Jennings* concern statements made to State agents during the commission of the crime on trial, and not statements made during subsequent crimes.

The case *sub judice* does not fall within the limited *Blake* and *Jennings* exclusions. The plain reading of Md.Rule 4–263(b)(2) requires the disclosure of "all statements" made to State agents. *Blake* and *Jennings* have excluded the "obvious" statements in any illegal drug sale, the verbal acts necessary to effect a transaction. In *Blake* the statements concerned price and in *Jennings* the statements were negotiations for the purchase of illegal drugs. Further, the excluded verbal acts formed the crime for which the defendant was standing trial. To ensure that the accused will have the opportunity to prepare a defense free from unfair surprise, we will strictly construe every limitation upon Md.Rule 4–263(b)(2). Only those statements that pertain directly to verbal acts necessary to effect the commission of the crime for which the defendant is accused are excluded from Md.Rule 4–263(b)(2). Appellant's statement was an extraneous remark made at the conclusion of a sale of cocaine conducted almost three weeks after the alleged transaction for which the defendant was on trial. It was discoverable under Md.Rule 4–263(b)(2), and should have been produced in response to the defendant's request.

## B. *Reversible Error*

[W]hen a discovery violation comes to light in the course of trial, whether any sanction is to be imposed and, if so, what it is to be, is in the first instance committed to the discretion of the trial judge. The exercise of that discretion includes evaluating whether a discovery violation has caused prejudice. When asked to grant a mistrial as a sanction for a discovery violation by the State which was revealed during trial a circuit judge would look at the record as a whole to determine whether the matter omitted from a formal discovery production by

the State had nevertheless been timely communicated to or known to the defense in some other way.

*Warrick v. State,* 302 Md. 162, 173, 486 A.2d 189 (1985) (citations omitted). There was no evidence that appellant knew prior to trial that the alleged statement was going to be used. The fact that appellant plead guilty to the charge upon which the disputed statement was based does not render that statement admissible.

■ In *Bailey, supra,* the Court of Appeals held that there had been a discovery violation, contrary to the determination of the trial court. Relying in part on *Warrick,* the Court fashioned a three step test for the trial court to determine on remand the appropriate sanction for a discovery violation that came to light in the course of the trial. Step three provides:

Here the circuit judge should consider whether Bailey was otherwise prejudiced by the State's discovery violation. The burden is on the State to prove beyond a reasonable doubt that there was no prejudice. *Warrick, supra,* 302 Md. at 174, 486 A.2d at 195. If the State is able to meet that burden, the judgment of conviction stands. If the State cannot show the absence of prejudice, the circuit court should grant a new trial.

303 Md. at 659, 496 A.2d 665.

After a review of the record, we cannot say, beyond a reasonable doubt, that absent appellant's statement, he would have been convicted. *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976). None of the witnesses saw appellant handle the ounce of cocaine or the money exchanged between Johnson and "the runner" Larry. None of the witnesses could state where Larry obtained the cocaine. None of the witnesses agreed on appellant's actions during the transaction. Gray testified that appellant walked into apartment 805B with his brother. Young testified that no one went into the apartment. Johnson testified that appellant remained with the group of men throughout the transaction but another individual walked into apartment 805B after speaking with appellant. It is only by adding appel-

lant's statement to this evidence that the glue needed to bind him to the transaction is provided. Although appellant was never seen with cocaine or money, considering appellant's statement, one can reasonably infer that he was the dealer surrounded by employees. We cannot say beyond a reasonable doubt that appellant was not prejudiced by the jury's consideration of Officer Young's testimony concerning appellant's statement. We, therefore, reverse.

Although this issue is dispositive of the appeal, for the direction of the court on retrial we will respond to the remaining issues.

## II.

■ Appellant contends that the court erred in admitting evidence of his actions during an unrelated sale of illegal drugs for which he pled guilty to Possession with Intent to Distribute.

"Whenever evidence of prior misconduct is offered for any purpose other than to show propensity, it is, subject only to the universal balancing of relevance and its counterweights, presumptively admissible." *Harris v. State*, 81 Md.App. 247, 270, 567 A.2d 476 (1989), *cert. granted*, 319 Md. 111, 570 A.2d 1244 (1990). *Harris* did not change the law, but "simply changed the overall construct from exclusionary rule with exceptions to general rule of inclusion with the exception of showing propensity to commit bad acts." *Simms v. State*, 83 Md.App. 204, 211, 574 A.2d 12 (1990); *accord, Harris*, 81 Md.App. at 279, 567 A.2d 476; *cf. Ross v. State*, 276 Md. 664, 669–70, 350 A.2d 680 (1976).

The State proffered that appellant's participation in the March 7 sale was "offered for every other reason other than the propensity [to commit crime]"; however, in their brief the essence of the State's argument is that it is probative of *modus operandi*, a subset of identity, for it was necessary to establish that appellant was a participant in the sale at issue although he did not make actual delivery of the cocaine. *Modus operandi* is a permissible reason

under *Harris;* although it does not guarantee admissibility. The evidence is still subject to "the universal balancing of relevance and its counterweights ... [of which] the greatest of these is unfair prejudice." *Harris,* 81 Md.App. at 270, 285, 567 A.2d 476. "[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." *Id.* at 285, 567 A.2d 476, *quoting* Federal Rule of Evidence 403. Indeed, "because of the potential danger involved, the admission of other crimes evidence 'should be subjected to rigid scrutiny by the court.'" *State v. Faulkner,* 314 Md. 630, 634, 552 A.2d 896 (1989), *quoting Ross,* 276 Md. at 671, 350 A.2d 680. Chief Judge Murphy described the dangers in *Straughn v. State,* 297 Md. 329, 333, 465 A.2d 1166 (1983):

> "First, if a jury considers a defendant's prior criminal activity, it may decide to convict and punish him for having a criminal disposition. Second, a jury might infer that because the defendant has committed crimes in the past, he is more likely to have committed the crime for which he is being tried."

The exclusion of otherwise admissible evidence of "other crimes" is a matter of discretion. Therefore, "[a] decision to admit other crimes evidence clearly incorrect 'on this question of balancing probative value against danger of prejudice will be corrected on appeal as an abuse of discretion.'" *Faulkner,* 314 Md. at 641, 552 A.2d 896, *quoting Brafman v. State,* 38 Md.App. 465, 476, 381 A.2d 687 (1978). This standard, however, is "rarely met," because the trial court is in the best position to determine the weight to be given the various relevant factors and therefore should not be reversed merely because the appellate court would have decided the issue differently. *Harris,* 81 Md. App. at 298, 567 A.2d 476, *citing, United States v. Lebovitz,* 669 F.2d 894, 901 (3d Cir.1982) and *United States v. Long,* 574 F.2d 761, 767 (3d Cir.1978).

"In order to establish *modus operandi,* the other crimes must be 'so nearly identical in method as to earmark them as the handiwork of the accused.... The device used to

commit the crime must be so *unusual and distinctive* as to be like a signature.' " *Faulkner*, 314 Md. at 638, 552 A.2d 896, *quoting McKnight v. State*, 280 Md. 604, 613, 375 A.2d 551 (1977) (emphasis in original). In *Faulkner*, the court was confronted with three armed robberies of a Safeway store. The issue was whether evidence that Faulkner committed two of the crimes was sufficiently probative of *modus operandi* to be admissible in his trial for the third. The court determined that all three robberies were sufficiently similar when viewed together to establish *modus operandi*. *Faulkner*, 314 Md. at 640, 552 A.2d 896. Each robbery was of the same Safeway store committed on a Friday night at about the same time by a right handed man who wore a mask and gloves, was armed with a gun and who carried a bag to transport the stolen money. In each instance, the robber confronted the employees by jumping on the check-out stand and demanding bills in large denominations. *Id.* at 639, 552 A.2d 896. All three robberies were committed within one year. *Id.* at 635–6, 552 A.2d 896. The Court held that the trial court did not abuse its discretion in admitting this evidence for the limited issue of identity because this evidence was "reasonably necessary and served an appropriate probative purpose. In other words, did more than suggest to the jury that Faulkner was a bad man or had a propensity to commit crime." *Id.* at 643, 552 A.2d 896.

The case *sub judice* is clearly distinguishable from *Faulkner*.

> It is apparent that the indicated inference [of *modus operandi* ] does not arise, however, from the mere fact that the charged and uncharged offenses share certain marks of similarity, for it may be that the marks in question are of such common occurrence that they are shared not only by the charged crime and defendant's prior offenses, but also by numerous other crimes committed by persons other than the defendant.

*Moore v. State*, 73 Md.App. 36, 41, 533 A.2d 1 (1987), *quoting People v. Haston*, 69 Cal.2d 233, 70 Cal.Rptr. 419,

427–8, 444 P.2d 91, 99 (1968). Since use of "a runner" to deliver cocaine is commonplace, the fact that appellant used "a runner" in a drug transaction on another occasion is not so unique as to separate appellant from the group of men present at the transaction of February 17, 1988, and identify him as the dealer who employed "Larry" to deliver the cocaine. Furthermore, there is nothing inherently unique in a transaction involving "a runner" so as to establish, on the facts before us, that one was even used in the transaction of February 17, 1988. The events of March 7, 1988 are insufficient to establish a *modus operandi* unique to appellant when linked with the events of February 17, 1988 and thus had little, if any, probative value.

Although not unique in method, the prior crime is similar in substance and thus highly prejudicial. "[An] important factor to remember is that a prior conviction which is similar to the crime for which the defendant is on trial may have a tendency to suggest to the jury that if the defendant did it before he probably did it this time." *Prout v. State,* 311 Md. 348, 364, 535 A.2d 445 (1988). The admission of appellant's prior guilty plea and the events that surrounded the underlying crime constituted a clear abuse of discretion.

On retrial, when and if this evidence is proffered, the court should consider it in light of *Harris* and *Faulkner.*[5]

### III.

Appellant contends that the court erred in not striking a prospective juror pursuant to Md.Rule 4–312. We find no error.

The prospective juror stated that he would be inclined to give the testimony of a police officer more weight than the testimony of other witnesses and that he did not think he would be able to give the appellant, who is black, a fair trial

---

**5.** In *Dyce v. State,* 85 Md.App. 193, 582 A.2d 582 (1990), we held that the probative value of evidence of a prior conviction for distribution was clearly outweighed by its prejudicial effect in a trial involving a virtually identical crime.

because, "I've had some bad experiences with black people." After further questioning by the court, the prospective juror answered that he would give the defendant "a fair shake." The court refused to strike the prospective juror for cause pursuant to Md.Rule 4–312(e). Consequently appellant used a peremptory challenge under Md.Rule 4–313. Appellant exercised nine of his ten peremptory challenges. At the conclusion of jury selection, the court asked if the jury panel was acceptable. Counsel for appellant stated, "The petite [sic] jury is acceptable to the defense, your Honor." [6]

Appellant abandoned his claim of error when he indicated that the jury panel was acceptable. *Mills v. State*, 310 Md. 33, 40, 527 A.2d 3 (1987), *vacated on other grounds*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); *White v. State*, 300 Md. 719, 729, 481 A.2d 201 (1984). Md.Rule 8–131. Moreover, "when an accused has not exhausted his peremptory strikes, failure to disqualify a prospective juror for cause is not reversible error." *Mills*, 310 Md. at 40, 527 A.2d 3; *accord*, *White*, 300 Md. at 728, 481 A.2d 201.

## IV.

■ Appellant contends that the court erred by passing sentence based upon evidence of dubious reliability. We agree.

In *Henry v. State*, 273 Md. 131, 147–8, 328 A.2d 293 (1974), the Court of Appeals adopted the dissent of Judge Davidson in *Henry v. State*, 20 Md.App. 296, 315 A.2d 797 (1974) as a correct exposition of the law on the issue of sentencing:

> The scope of a sentencing judge's inquiry in imposing sentence is sufficiently broad to permit him to consider information concerning the convicted person's background and other relevant matters, such as the gravity of

---

**6.** Previously, appellant objected on the grounds that the number of black potential jurors was disproportionate to the black population of Anne Arundel County, but this issue was not appealed.

the offense for which the person was convicted. While a sentencing judge's inquiry is not limited by the strict rules of evidence, and evidence of less probative value than is required for a determination of guilt may be considered, the judge may not consider evidence which possesses such a low degree of reliability that it raises a substantial possibility that his judgment may be influenced by inaccurate or false information. Consideration of such information leads to unwarranted assumption of guilt. For this reason, it has been recognized that when they stand alone, bald accusations of criminal conduct for which a person either has not been tried or has been tried and acquitted may not be considered by the sentencing judge. However, in assessing such factors as the background of the individual and the gravity of the offense, sentencing judges are permitted to consider reliable evidence of conduct which may be opprobrious although not criminal, as well as the details and circumstances of criminal conduct for which the person has not been tried.

(citations omitted). This is in accord with Md.Code Ann. art. 27, § 298 (1990) which provides:

(e) *Use of hearsay evidence*—Notwithstanding any provision of law to the contrary, at any hearing relating to bail or sentencing arising out of any violation or alleged violation of any provision of this subheading, hearsay evidence shall be admissible if relevant to the issue and if the underlying circumstances upon which it is based and the reliability of the source of the information is demonstrated.

The evidence presented by the State and admitted by the court at the sentencing hearing was replete with testimony that was multiple levels of hearsay attributable to unnamed confidential informants. Detective John Brown of the Anne Arundel County Police Department testified that he received information about appellant from six confidential informants whom he testified were reliable, although he did not state a basis for this conclusion. He then stated that he was told that appellant was a large scale drug dealer who

ran cocaine for a convicted trafficker. Detective Brown testified that the confidential informants had purchased cocaine from appellant, but he admitted that he never made a buy from appellant. Detective Brown then testified that he received information from Anne Arundel County Police Officers that a New Jersey State Trooper told them that he was involved in a high speed chase on the New Jersey Turnpike with a black Corvette owned by a Mr. Johnson, but allegedly operated "continuously" by appellant.

Detective Dennis Powell of the Anne Arundel County Police Department testified that he saw appellant drive to court on the first day of his trial in a black Corvette. He saw appellant make motions about his neck and looked into the Corvette after appellant left and saw gold rings, a gold necklace, a beeper and a car phone. Detective Powell stated that he did not know who owned these items.

Detective Gregg Spriggs of the Anne Arundel County Police Department testified that he received information about appellant from two confidential informants who were different than those who informed Detective Brown. He also testified that the confidential informants were reliable without stating a basis for his conclusion. He testified that he was told that appellant was involved in a large scale distribution of cocaine in the Annapolis area where appellant would obtain cocaine from Philadelphia, "cut it up" in an Annapolis motel and distribute it. The State introduced receipts from an Annapolis Econo–Lodge in the name of both Mitchell Brown and Tina Barnes, who, Detective Spriggs testified, was appellant's girlfriend. Detective Spriggs testified that he was told by the manager that appellant exchanged briefcases or suitcases with people from New York in the motel parking lot. Detective Spriggs then stated that the confidential informants told him that appellant also dealt cocaine while in the Detention Center. Detective Spriggs conducted surveillance at the Econo–Lodge but never saw appellant. He then testified that a storage locker rented in appellant's name contained documents pertaining to the black Corvette, rims for the Cor-

vette's wheels and furniture receipts in the name of Mitchell Brown with the address listed as 805 Brook Court. Detective Spriggs testified that the Director of the Maryland Income Tax Division told him that appellant did not file tax returns in 1987 and 1988, although he admitted that he had no knowledge whether appellant was employed during those years.

There is no evidence that appellant was ever tried or even charged with these crimes. There were no facts beyond the conclusions of the witnesses upon which the court could assess the reliability or credibility of the outside sources. In effect, this testimony was no more than street gossip.

It is clear that the court considered this evidence in passing sentence.

> But I just want to indicate as to—for the purpose of sentencing which evidence I'm relying upon that I've heard this afternoon. The evidence that he was a major dealer, regardless of how you define it. The fact that he had the beeper, the gold, considering that connection with the convictions of distribution. This business with the hotel room and rather unusual number of times that we have this hotel room. The fact that we haven't had income taxes filed. I understand that doesn't mean he hadn't made income, but considering as a whole, this is what the court considers.

> As to whether he was dealing while he was still in the Detention Center awaiting trial on this, I have a problem evaluating that testimony and I—I don't rely upon that.

In *Nickens and Rhodes v. State,* 17 Md.App. 284, 301 A.2d 49 (1973), Rhodes was convicted of possession of heroin with intent to distribute. At the hearing on sentencing, Detective Sallow testified that Rhodes was a distributor and a "drop-off man" in a large drug organization which spanned the entire city of Baltimore. *Id.* at 287, 301 A.2d 49. He acquired this information from "reliable" informants, his personal investigation, and his street knowledge.

He did not state who the informants were or how he had determined their reliability. *Id.* at 287–88, 301 A.2d 49.

We held that the court abused its discretion in admitting this testimony because there were no facts upon which the court could determine the reliability of Detective Sallow's conclusions or the credibility of the informants who supplied him with information. Md.Code Ann. art. 27, § 298(f) [7] permits hearsay testimony only if the "underlying circumstances" and the reliability of the sources are demonstrated. Neither was demonstrated. First, Detective Sallow did not testify to the specific hearsay upon which he based his conclusion that Rhodes was heavily involved in a city-wide drug organization. "It is the specific facts constituting the hearsay, not the witness's [sic] conclusion therefrom, that are admissible to establish informational reliability." *Id.* at 290, 301 A.2d 49. Second, Detective Sallow did not testify to the specific basis upon which he concluded that his unnamed sources were credible.

"Unbridled hearsay or opinions of witnesses, without supporting facts, should not be received." *Id.*

Similarly in the case *sub judice,* the witnesses did not provide specific facts to support the reliability of their conclusion that appellant was a large scale drug dealer or their assertions that their unnamed confidential informants were credible. Moreover, their testimony was inherently unreliable as it contained multiple levels of hearsay. The court should not have considered this evidence.

## V.

■ Finally, appellant contends that the trial court erred in not allowing counsel to respond to the basis upon which it relied in passing sentence. We disagree.

Md.Rule 4–342(e) provides:

(e) **Allocution and Information in Mitigation.**—Before imposing sentence, the court shall afford the defen-

---

7. § 298(e) is derived from § 298(f) without substantive change.

dant the opportunity, personally and through counsel, to make a statement and to present information in mitigation of punishment.

After the State presented its evidence, appellant's counsel argued in mitigation of punishment. At the conclusion of counsel's remarks, the court began to recite for the record the basis for its sentence. At this point, counsel asked to argue in mitigation and the court refused to permit him to do so. As appellant made full use of his opportunity to argue in mitigation, the court's decision was not an abuse of discretion. The time had passed for further argument.

JUDGMENT REVERSED; CASE REMANDED FOR NEW TRIAL.

COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.