607 A.2d 923

**STATE of Maryland**

v.

**Shirley Mitchell BROWN.**

**No. 30, Sept. Term, 1991.**

Court of Appeals of Maryland.

June 19, 1992.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for petitioner.

H. Richard Duden, III (Henley & Duden, both on brief) Annapolis, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

CHASANOW, Judge.

Shirley Mitchell Brown was convicted by a jury in the Circuit Court for Anne Arundel County of distribution and conspiracy to distribute cocaine. The charges against Brown stemmed from an ongoing undercover investigation of drug activity in Annapolis. When that investigation focused on Brown as a likely suspect, Special Agent Kenneth Johnson of the Drug Enforcement Administration contacted paid confidential informant Reginald Gray to arrange for Johnson to be introduced to Brown so that Johnson could then buy cocaine from Brown. Agent Johnson testified that originally he and Gray were to meet Brown at a shopping center in Annapolis, but those plans fell through. Gray testified that Brown was unwilling to deal directly with Agent Johnson, preferring instead to deal with Gray, whom he knew.

On February 17, 1988 Johnson and Gray drove to the Brooks Court Apartments in the Newton 20 area of Annapolis. There the two stopped the car in the apartment parking lot just past a group of men standing near a parked car. For Johnson's benefit, Gray identified Brown among the group before getting out of the car and approaching him. According to Gray's testimony, he and Brown had a brief conversation during which he asked the price of an ounce of cocaine and Brown replied that it would cost $1350. Gray then returned to the car and advised Johnson of the substance of the exchange. At Brown's request, Gray told Johnson to park the car farther down the parking lot. At that same time, Johnson saw Brown talk to another individual who then walked into apartment 805B of Brooks Court.

Agent Johnson testified that approximately five minutes later a man approached Johnson's car from the general direction of apartment 805B and identified himself to Johnson as "Larry." He handed Johnson an ounce of cocaine, stating that its price was $1350. Johnson gave Larry $1400 and then watched as Larry walked over to Brown, made an exchange with him, and returned to Johnson to give him $50 change. Detective Todd Young of the Anne Arundel County Police Department saw this transaction from the vantage point of his car parked in another section of the parking lot and corroborated most of Johnson's and Gray's testimony.

Over defense counsel's objection, Detective Young also testified that he was involved in an undercover cocaine purchase from Brown which occurred on March 7, 1988, roughly three weeks after the drug transaction here at issue. The court granted a continuing objection pursuant to Maryland Rule 4–323(b) to any testimony regarding the March 7, 1988 incident on the grounds of surprise, relevance, undue prejudice, and failure of the State to provide discovery. The trial court permitted the following exchange between the State's Attorney and Detective Young regarding the March 7, 1988 drug purchase:

Q: Now, did he hand the drugs to you or did he hand the drugs to the CI [confidential informant]?

A: No, he handed the drugs to the CI.

Q: What did Mr. Brown say to the CI?

A: He told the CI the next time for him to do a deal by himself.

Q: Did Mr. Brown then have occasion to say anything to you?

A: Yes. He told me that it's not that—he said exactly, "It's not that you're not okay, I just don't deal with anybody new."

Following this testimony, defense counsel objected that evidence of Brown's involvement in the second drug deal was irrelevant and highly prejudicial. The trial court allowed this testimony and also admitted the record of Brown's resulting conviction for distribution of cocaine, finding that neither was being offered to show Brown's propensity to commit the crime, but rather as evidence of Brown's "identity."

On appeal, the Court of Special Appeals held that Brown's statement to Detective Young was discoverable under Md.Rule 4-263(b)(2) and should have been produced in response to Brown's request. Further, that court found that this discovery violation was a sufficient ground for granting a mistrial because it could not say, beyond a reasonable doubt, that Brown would have been convicted on the evidence presented minus his statement to Young. *Brown v. State*, 85 Md.App. 523, 532–34, 584 A.2d 164, 169–70 (1991). Noting that this holding was dispositive of the appeal, the intermediate appellate court nevertheless went on for the benefit of the judge on retrial to address the admissibility of the evidence of Brown's actions during the second sale. The Court of Special Appeals ruled that the trial judge abused his discretion in admitting evidence of the March 7, 1988 transaction, because its probative value was outweighed by its prejudicial effect.

This Court granted certiorari to review each of these two holdings, as well as a third issue relating to the admissibility of hearsay evidence at sentencing. 323 Md. 27, 590 A.2d 549 (1991).

### I. Admissibility of Evidence at Trial

We must first consider whether the trial court erred in admitting evidence regarding Brown's involvement in the March 7, 1988 drug transaction. The admitted evidence consisted of "one sheet showing the entry of [Brown's] guilty plea" to distribution of cocaine as well as Detective Young's testimony about Brown's statements and physical acts during that drug transaction. In its petition for certiorari, the State alleges that:

"In this case, evidence of Brown's involvement in a drug transaction other than that for which he was standing trial was relevant to establish his participation in the instant offense. Indeed, inasmuch as Brown himself did not make the actual delivery of the cocaine to the under-cover officer, it was imperative that the State show the precise extent of Brown's involvement in the charged drug transaction. Evidence of his unwillingness to deal directly with persons with whom he was unfamiliar, as evidenced by his statement to Officer Young in the March 7, 1988 drug transaction to the effect that he did not deal with strangers, goes to explain and reinforce ... [Brown's participation in the instant offense]."

The Court of Special Appeals categorized all the evidence as "other crimes" evidence and indicated that the trial judge had abused his discretion in admitting it. As to evidence of Brown's conviction as the result of his guilty plea for the second drug deal, we believe it was correctly categorized as "other crimes" circumstantial evidence. If only Brown's conduct and the resulting conviction were offered, the evidence would not be admissible, since it would not fall within the identity exception for which it was proffered. Brown's statement during the transaction, however, was admissible because it had special relevance to a contested issue in the

case, was not introduced simply to prove criminal character, and had probative force that substantially outweighed its potential for unfair prejudice. *See Harris v. State,* 324 Md. 490, 597 A.2d 956 (1991).

The Court of Special Appeals concluded that "[t]he events of March 7, 1988 are insufficient to establish a *modus operandi* unique to appellant when linked with the events of February 17, 1988 and thus had little, if any, probative value." *Brown v. State,* 85 Md.App. at 537, 584 A.2d at 171. Had this evidence been offered in the absence of the statement, we would agree that Brown's use of a "runner" to deliver cocaine was not " 'so *unusual and distinctive* as to be like a signature' " and earmark the crime as the handiwork of the accused. *State v. Faulkner,* 314 Md. 630, 638, 552 A.2d 896, 900 (1989), (quoting *McKnight v. State,* 280 Md. 604, 613, 375 A.2d 551, 556 (1977), in turn quoting *McCormick on Evidence* § 190, at 479 (2d ed. 1972)). Were this the only ground of admissibility, the "other crimes" evidence could not be admitted.[1]

We agree with the Court of Special Appeals that the conviction must be reversed, although for substantially different reasons. Since the Court of Special Appeals "for the direction of the court on retrial" indicated that all of the events on March 7, 1988 would be inadmissible, we feel compelled to correct the intermediate appellate court's in-

---

**1.** This Court most recently addressed the admissibility of other bad acts or crimes evidence in *Harris v. State,* 324 Md. 490, 597 A.2d 956 (1991). There the Court held that such evidence is generally not admissible unless "the evidence 1) has special relevance, i.e. is substantially relevant to some contested issue in the case and is not offered simply to prove criminal character, and 2) has probative force that substantially outweighs its potential for unfair prejudice...." *Id.* at 500, 597 A.2d at 961. The Court of Special Appeals decided the instant case below and the parties argued to this Court before we had filed our decision in *Harris.* The intermediate appellate court concluded that the trial judge had abused his discretion in admitting the evidence because its probative value was clearly outweighed by its prejudicial effect. While this is a valid conclusion, we doubt that the evidence would survive *Harris'* threshold inquiry as to the "special relevance" of the evidence.

structions and to point out that Brown's statement on that date also relates to the sale in the instant case and was properly admitted.

■ Brown's statement is not confined to the sole category of "other crimes" evidence. During the March 7, 1988 drug transaction, Brown told Detective Young: "It's not that you're not okay, I just don't deal with anybody new." A reasonable implication from Brown's statement is that he conducts an ongoing drug business in which he has direct contact only with customers he knows and, with customers like the undercover agent in the instant case whom he does not know, he deals indirectly through an intermediary. Brown's explanation of how he conducted his ongoing business was probative of how he conducted that same business 2½ weeks earlier during the sale here charged. Moreover, Brown's statement would not be objectionable on the ground of hearsay, because it was an admission of a party opponent. This Court has stated that "an admission is a statement of pertinent facts which, in connection with proof of other facts, tends to prove guilt...." *Holland v. State,* 244 Md. 671, 673, 224 A.2d 864, 865 (1966). *See also* 2 *McCormick on Evidence,* § 254 (4th ed., J. Strong 1992).

The Court of Special Appeals saw the issue as only involving the admissibility of "other crimes" evidence. We disagree. The evidence was not simply that on another occasion Brown also sold drugs—it was that Brown made an admission about the manner in which he acts when carrying on his drug business. His statement related to not just the March 7th drug sale—it also related to and explained his actions on February 17, 1988.

The statement has relevancy, therefore, far beyond any improper suggestion that Brown has a criminal propensity, or that since he dealt drugs on another occasion, he is more likely to have done so in the case charged. Perhaps an analogous situation might be a case where the defendant was charged with selling drugs to an undercover agent at a certain location on Tuesday, April 2. Two weeks later, on

Tuesday, April 16, the defendant sold drugs to a second undercover agent at the same location. On the second occasion the defendant said, "I sell drugs in this area only on Tuesdays." The second sale would not be admissible to prove guilt of the first sale, but the admission about selling drugs on Tuesdays might be admissible. Likewise, Brown's statement is relevant to the manner in which he operates and operated on February 17, 1988.

■ Obviously, Detective Young's testimony about Brown's statement would make little sense to the jury if offered in a vacuum. An explanation of the context in which the statement was made is necessary to make clear the implications of the statement. To that end, Detective Young's testimony concerning Brown's conduct as well as his statements during the March 7, 1988 transaction might be properly admitted.

The evidence with probative value is Brown's statement about how he generally conducted his drug business, not the fact that he sold drugs on March 7. A one-page record of conviction showing Brown's guilty plea to the March 7th sale was offered, over objection, following Detective Young's testimony about the sale and Brown's admission. The record of conviction was unnecessary "other crimes" evidence of the second sale, and not of Brown's admission during that sale. Therefore, it should not have been admitted.

■ We must next address whether admitting the one-page record of Brown's guilty plea to the March 7th sale was harmless beyond a reasonable doubt. The jury might have misused the conviction to draw an inference that Detective Young's testimony was more credible because it was corroborated by evidence of the guilty plea conviction. Further, the sheet which revealed Brown's guilty plea—and thus his conviction—also showed that the judge had ordered Brown to undergo weekly urinalyses and to be subjected to a "drug history" investigation. This information, which went beyond the conviction, may have indicated to the jury

the judge's belief that Brown was a habitual drug user. The prejudicial effect of the record of conviction, therefore, outweighed its probative value, and its admission was not harmless beyond a reasonable doubt. For these reasons, the conviction must be reversed.

## II. Scope of Md.Rule 4–263(b)(2)

■ The second issue raised in the petition for certiorari, which we hold was erroneously decided by the Court of Specials Appeals, is whether the State was compelled, in response to Brown's pretrial request, to disclose the admission that Brown made to Detective Young that "I just don't deal with anybody new." The resolution of this issue requires us to further define the scope of discovery mandated by Maryland Rule 4–263(b)(2), which provides:

"(b) **Disclosure Upon Request.**—Upon request of the defendant, the State's Attorney shall:

\*   \*   \*   \*   \*   \*

2) *Statements of the Defendant.*—As to all statements made by the defendant to a State agent that the State intends to use at a hearing or trial, furnish to the defendant, but not file unless the court so orders: (A) a copy of each written or recorded statement, and (B) the substance of each oral statement and a copy of all reports of each oral statement."

Present Rule 4–263 was derived from former Md.Rule 741 and was adopted without significant change to the language that addresses the required disclosure of a defendant's statements. This Court has not previously had occasion to address a discovery challenge under 4–263(b)(2), but those cases interpreting the same language in former 741(b)(2) are controlling.

Although the literal language of 4–263(b)(2) refers to "all statements made by the defendant to a State agent that the State intends to use at a hearing or trial," we have explained that the scope of required disclosure is defined by the underlying policies of the Rule. In defining those

"statements" which the State must disclose, this Court most recently explained that subsection (b) cannot be read in isolation, but should be read in conjunction with subsection (a). *Bailey v. State,* 303 Md. 650, 655, 496 A.2d 665, 667 (1985). Maryland Rule 4-263(a) provides in pertinent part:

"Discovery and inspection in circuit court shall be as follows:

(a) **Disclosure Without Request.**—Without the necessity of a request, the State's Attorney shall furnish to the defendant:

\*     \*     \*     \*     \*     \*

(2) Any relevant material or information regarding: (A) specific searches and seizures, wire taps or eavesdropping, (B) the acquisition of statements made by the defendant *to a State agent that the State intends to use at a hearing or trial,* and (C) pretrial identification of the defendant by a witness for the State." (Emphasis added.)

This Court has indicated through both judicial interpretation and its constitutional rulemaking power that the scope of the "statements" under Rule 4-263(a)(2)(B) and (b)(2) is to be parallel. Further, the Court has consistently interpreted the scope of the "statements" in accordance with the underlying policies of the disclosure rule. The Court in *White v. State,* 300 Md. 719, 481 A.2d 201 (1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985), addressed the scope of disclosure under former Md.Rule 741(a)(2)(b), which by its language required the State to disclose "statements made by the defendant." While the literal language of the Rule may have implied a broader scope, the Court held that the express limitation in subsection (b)(2)—statements made to a State agent that the State intends to use at a hearing or trial—should also be read into subsection (a)(2). *White,* 300 Md. at 733, 481 A.2d at 208. The Court adopted this limited interpretation of "statements" based on the clear relationship between the disclosure rule and the rule dealing with pretrial suppression motions. Judge Rodowsky, writing for the Court, stated

that "the purpose of Rule 741 a 2 is to force the defendant to file certain motions before trial, including a motion to suppress an unlawfully obtained statement." *Id.* at 734, 481 A.2d at 208. Consequently, the Court concluded that "[b]ecause statements made to third parties who are not State agents cannot ordinarily be the subject of a motion to suppress on the ground that they have been unlawfully obtained, they are not within the ambit of disclosure required by Rule 741 a 2." *Id.* at 736, 481 A.2d at 209.

In 1985 this Court, through its rulemaking power, incorporated the interpretation of subsection (a)(2) as set forth in *White* by adding the language "made to a State agent that the State intends to use at a hearing or trial" in order to provide for the consistency of treatment of subsections (a)(2) and (b)(2). 12:21 Maryland Register 2017–18, 2020 (October 10, 1985); 13:9 Maryland Register 1012 (April 25, 1986). Thus, the language of both subsections makes clear that Rule 4–263 was not intended to authorize wide-open discovery of all of a defendant's statements. It does not authorize discovery of admissions or confessions made to one who is not a State agent. Rather, it provides for the discovery of statements which might possibly have been unlawfully obtained.

In *Jennings v. State*, 303 Md. 72, 492 A.2d 295 (1985),[2] the Court again identified a limitation on the scope of required State disclosure of "statements." The Court in *Jennings* held that comments made by the defendant to an undercover officer in connection with an illegal drug sale for which the defendant was being tried were not "statements" within the meaning of subsections (a)(2)(b) and (b)(2). The Court noted that "the issue presented concerns the meaning of 'statement(s)' as used in both § a 2(b) and b

---

2. The Criminal Rules Subcommittee, in considering the evolving scope of discovery as defined by *Jennings v. State,* 303 Md. 72, 492 A.2d 295 (1985), stated that it "believe[d] that this matter of interpretation is best left to developing caselaw." Minutes of September 13, 1985 Rules Committee at 66–67.

2" and explained the relationship between these two subsections:

> "The discovery of contents of statements was governed by § b, and the automatic production required by § a of 'material or information dealing with circumstances in which a statement was obtained from the accused by a State agent' triggered the running of the time under former Md.R. 736 b within which the defendant was to file a motion to suppress."

*Id.* at 76–77, 492 A.2d at 297. Thus, the Court in *Jennings* indicated that the scope of the "statements" contemplated by the two subsections was to be parallel. If the State was not compelled to disclose the "relevant material or information regarding ... the acquisition of" the statement under subsection (a)(2)(b), neither would the State be required, upon defendant's request, to disclose the "substance" of the statement under subsection (b)(2).

In *Jennings,* we looked both to the background of the Maryland Rules and to Federal Rule of Criminal Procedure 16(a)(1)(A)[3] for guidance. We then reasoned that "[u]nder a state rule tracking current FED.R.CRIM.P. 16 Jennings' conversation with [the undercover officer] would not be discoverable. At a minimum this would be because their conversation was not electronically recorded and because [the undercover officer] was not at the time known to Jennings to be a State agent." *Id.* at 85, 492 A.2d at 301–

---

3. FED.R.CRIM.P. 16(a)(1)(A), insofar as it is relevant to the case before us, provides:

> "(A) Statement of Defendant. Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; *the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent;* and recorded testimony of the defendant before a grand jury which relates to the offense charged." (Emphasis added.)

02. *See, e.g., United States v. McClure,* 734 F.2d 484, 493 (10th Cir.1984) (oral statements made by defendant to undercover agent during drug deal were not discoverable because defendant did not know true identity of agent when statements were made during deal).

The Court in *Jennings* expressly, and implicitly by citing the federal corollary, emphasized that the underlying purpose of disclosure under subsections (a)(2) and (b)(2) is to force the defendant to file a motion to suppress prior to trial. *See also Bailey,* 303 Md. at 655, 496 A.2d at 667, where the Court noted "that there is an interrelationship between §§ a and b of the rule and that the automatic disclosure required by § a is designed to force the accused to file any motions to suppress in advance of trial on the merits." Admissions, statements, or confessions that might have been unlawfully obtained are subject to a pretrial motion to suppress under Md.Rule 4–252(a)(4). Under Rule 4–252 an allegation that an admission, statement, or confession was unlawfully obtained must be raised by pretrial motion or it is waived. In limiting by rule required State disclosure to statements made to State agents, and in excluding by decision statements made to State agents during the commission of the crime, this Court has, as have the federal courts, made it clear that oral statements which must be disclosed under 4–263 are those statements which might possibly have been unlawfully obtained and suppressible under 4–252. Statements made during the commission of the crime, albeit to a State agent, could not possibly have been unlawfully obtained and under *Jennings* need not be disclosed under 4–263. The statement made in the instant case is analogous to the statements in *Jennings.* In both cases the statements were made during drug deals to persons who were not known to be State agents and who were not trying to elicit any admissions or confessions.

There is not the slightest suggestion before this Court that Officer Young's involvement in the second drug transaction was for the purpose of inducing or deliberately eliciting Brown's statement. Rather, Brown voluntarily

made the statement under circumstances involving no interrogation or coercion. Brown, therefore, did not and could not contend that his statement was acquired in violation of his Fourth, Fifth, or Sixth Amendment rights. We can find no reason to compel the State to produce a statement voluntarily made to an undercover officer during a drug transaction merely because it occurred after the crime for which the defendant was charged. Consequently, Brown's statements, like Jennings', are not discoverable under Md. Rule 4–263(a)(2)(B) and (b)(2). The State was required to disclose neither the substance of Brown's admission nor the circumstances behind its acquisition; therefore, no discovery violation occurred for which a sanction could be imposed.

■ As a final word on required State disclosure under this Rule, we note that the State should err on the side of disclosure in any case where there reasonably exists the possibility that the statement was unlawfully obtained. This word of caution is issued because if the statement was discoverable and wasn't provided, the trial court may, within its discretion, impose a sanction for the discovery violation under 4–263(i). Subsection (i) authorizes the trial judge to order the violating party "to permit the discovery of the matters not previously disclosed, strike the testimony to which the undisclosed matter relates, grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances." Thus, the State should consider the possible repercussions of failing to disclose a statement that the defendant had reasonable grounds to argue was subject to a pretrial suppression motion.

### III. Admissibility of Evidence at Sentencing

Brown's final argument to this Court is that the trial court erred by passing sentence based on hearsay evidence of dubious reliability. Because we have remanded this case for a new trial, we need not review any possible error in

sentencing. We do note, however, that should Brown be subject to resentencing, any hearsay evidence admitted by the sentencing court must meet the requirements of Maryland Code, Art. 27, § 298(d) (1987 Repl.Vol., 1991 Cum. Supp.):

> "(d) *Use of hearsay evidence.*—Notwithstanding any provision of law to the contrary, at any hearing relating to bail or sentencing arising out of any violation or alleged violation of any provision of this subheading, hearsay evidence shall be admissible if relevant to the issue and *if the underlying circumstances upon which it is based and the reliability of the source of the information is demonstrated.*" (Emphasis added.)

Accordingly, we must remand this case for a new trial. At the new trial, the State should be allowed to prove Brown's admission and the circumstances surrounding the admission but not the record of conviction of the subsequent distribution charge.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY TO CONDUCT A NEW TRIAL IN ACCORDANCE WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.

ELDRIDGE, Judge, concurring and dissenting:

I concur in both the grant of a new trial and in the first paragraph of Part III of the majority's opinion, relating to the admissibility of hearsay evidence at sentencing. I do not agree, however, with the remainder of the majority's opinion or with that portion of the judgment directing that the new trial be conducted in accordance with the majority's opinion.

I.

The basis for the Court of Special Appeals' reversal of the defendant's conviction was the court's holding that the State had violated Maryland Rule 4–263(b)(2) by failing to disclose the defendant's statement made to Detective Young. The first question presented in the State's petition for a writ of certiorari was as follows:

"1. Did the Court of Special Appeals err in concluding that Maryland's discovery rule requires the State to disclose, upon defense request, statements made by the defendant to an undercover police officer during the commission of a crime, where evidence of that crime is offered as 'other crimes' evidence at the defendant's trial?"

The majority deals with this issue in Part II of its opinion.

For the reasons set forth in my dissenting opinion in *Jennings v. State*, 303 Md. 72, 86–88, 492 A.2d 295, 302–303 (1985), I disagree with Part II of the majority's opinion in this case. Furthermore, even if I had agreed with the Court's holding in *Jennings*, I would dissent from the majority's expansion of the *Jennings* holding in this case. As Judge Bishop pointed out for the Court of Special Appeals below (*Brown v. State*, 85 Md.App. 523, 532, 584 A.2d 164, 169 (1991)),

"[m]oreover, ... *Jennings* concern[ed] statements made to State agents during the commission of the crime on trial, and not statements made during subsequent crimes.

"The case *sub judice* does not fall within the limited ... *Jennings* exclusion [ ]. The plain reading of Md.Rule 4–263(b)(2) requires the disclosure of 'all statements' made to State agents. ... *Jennings* ... excluded the 'obvious' statements in any illegal drug sale, the verbal acts necessary to effect a transaction. In ... *Jennings* the statements were negotiations for the purchase of illegal drugs. Further, the excluded verbal acts formed the crime for which the defendant was standing trial. To ensure that the accused will have the opportunity to

prepare a defense free from unfair surprise, we will strictly construe every limitation upon Md.Rule 4–263(b)(2). Only those statements that pertain directly to verbal acts necessary to effect the commission of the crime for which the defendant is accused are excluded from Md.Rule 4–263(b)(2). Appellant's statement was an extraneous remark made at the conclusion of a sale of cocaine conducted almost three weeks after the alleged transaction for which the defendant was on trial. It was discoverable under Md.Rule 4–263(b)(2), and should have been produced in response to the defendant's request."

## II.

While the Court of Special Appeals ruled that the discovery violation was "dispositive of the appeal," the intermediate appellate court "for the direction of the court on retrial ... respond[ed]" to the defendant's contention that the evidence concerning the March 7, 1988, drug transaction was inadmissible "other crimes" evidence. The majority disagrees with the Court of Special Appeals' suggestion that all of this evidence is inadmissible, and the majority feels "compelled to correct the intermediate appellate court's instructions." Maj. at 87–88.

The majority asserts that Brown's statement during the March 7, 1988, transaction "was admissible because it had special relevance to a contested issue in this case, was not introduced simply to prove criminal character, and had probative force that substantially outweighed its potential for unfair prejudice." Maj. at 86–87. In my view the Court of Special Appeals was justified in concluding that the evidence of the March 7th drug transaction was inadmissible under the rule which generally excludes evidence of other crimes or misconduct.

As acknowledged by the majority opinion, this Court in *Harris v. State*, 324 Md. 490, 597 A.2d 956 (1991), reaffirmed that other crimes evidence "is generally not admissible ... [unless] the evidence 1) has special relevance, *i.e.*

is substantially relevant to some contested issue in the case and is not offered simply to prove criminal character, and 2) has probative value that substantially outweighs its potential for unfair prejudice...." *Harris v. State, supra,* 324 Md. at 500, 597 A.2d at 961. Moreover, we "conclude[d] that continued adherence to the 'exclusionary' approach [to other crimes evidence] is appropriate," 324 Md. at 494–495, 597 A.2d at 959. Finally, we stated in *Harris* that "[t]he so-called exceptions [to the exclusionary rule] are helpful as classifications of those areas where evidence has most often been found admissible even though it discloses other bad conduct ...," 324 Md. at 497–498, 597 A.2d at 960.

The majority engages in the *Harris* two-step analysis first by asserting, without explanation, that the evidence has special relevance. It then conducts the requisite balancing and concludes that the evidence is admissible. The majority makes no attempt to demonstrate the special relevance by reference to any of the categories of exceptions to the general exclusionary rule developed by our previous cases. *See, e.g., State v. Werner,* 302 Md. 550, 556–557, 489 A.2d 1119, 1122–1123 (1985); *Ross v. State,* 276 Md. 664, 669–670, 350 A.2d 680, 684 (1976).

In fact, somewhat inconsistently, the majority agrees with the Court of Special Appeals that the evidence concerning the March 7, 1988, incident does not fall within the *modus operandi* subset of the identity exception to the other crimes rule (maj. at 87). Yet no explanation is offered to demonstrate the special relevance of this evidence except that "Brown's explanation of how he conducted his ongoing business was probative of how he conducted the same business 2½ weeks earlier during the sale here charged." (Maj. at 88). This seems to be part of the reasoning underlying the identity or *modus operandi* exception to the rule precluding evidence of other crimes. *See State v. Faulkner,* 314 Md. 630, 638–640, 552 A.2d 896, 899–901 (1989). Furthermore, the only "special relevance" asserted by the State at trial, in the Court of Special Appeals, and in

this Court, was that the evidence fell within the identity exception.

This Court in *State v. Faulkner, supra,* 314 Md. at 637–640, 552 A.2d at 899–900, discussed in detail the identity exception to the rule excluding other crimes evidence. The Court set forth ten subsets of the exception, one of which was "that a peculiar *modus operandi* used by the defendant on another occasion was used by the perpetrator of the crime on trial." 314 Md. at 638, 552 A.2d at 900. As the Court of Special Appeals pointed out, the *modus operandi* subset is the obvious one involved in the present case. In fact, it is the statement by the defendant to Detective Young describing the defendant's method of doing business, *i.e.,* his *modus operandi,* that furnishes a basis for the State's attempt to have the evidence concerning the March 7, 1988, drug transaction admitted under the identity exception to the other crimes exclusionary rule.

The majority's rationale suggesting the admissibility of this other crimes evidence is unclear. If the majority is saying that the *modus operandi* or identity exception to the rule precluding other crimes evidence can be demonstrated in several ways, such as by the evidence of the common pattern offered in *State v. Faulkner, supra,* or by a description of how the defendant usually conducts business similar to that offered in this case, I would not disagree in principle.[1] But, if the majority actually agrees

---

1. I note that the evidence offered here falls short of the requirements of *modus operandi.* The *Faulkner* opinion set forth the requirements for the *modus operandi* subset of the identity exception as follows (314 Md. at 638, 552 A.2d at 900, quoting *McKnight v. State,* 280 Md. 604, 613, 375 A.2d 551, 556 (1977), quoting C. McCormick, Evidence § 190, at 479 (2d ed. 1972):

   "In order to establish *modus operandi,* the other crimes must be ' "so nearly identical in method as to earmark them as the handiwork of the accused.... The device [used to commit the crime] must be so *unusual and distinctive* as to be like a signature." ' "

   In *Faulkner,* the defendant had committed three armed robberies of Safeway stores, all on Friday nights, using a distinctive mask, gloves and bag each time, and jumping on the check-out stand each time, demanding large denomination bills. The facts of the instant case,

with the Court of Special Appeals that this evidence does not fall within the *modus operandi* exception, I cannot comprehend how this evidence has special relevance. If the majority's opinion is taken literally, it is internally inconsistent as well as inconsistent with our prior cases involving the rule precluding other crimes evidence and the exceptions to that rule. *See Harris v. State, supra; State v. Faulkner, supra,* 314 Md. 630, 552 A.2d 896; *Ross v. State, supra,* 276 Md. 664, 350 A.2d 680.

For the foregoing reasons, I would simply affirm the judgment of the Court of Special Appeals.

---

involving testimony of one other drug transaction and the defendant's statement that he does not deal with anybody new, can be distinguished from *Faulkner.* The mere statement in this case concerning how the defendant does business is not sufficient to show a *modus operandi* within the meaning of *Faulkner.* Despite the statement to Detective Young on March 7, 1988, about how the defendant does business, the defendant in fact dealt face to face with Detective Young on that day. His actions seem to negate his admission about how he usually conducts his business.